**CITADEL HOLDING CORPORATION, a corporation of the State of Delaware, Defendant Below, Appellant/Cross Appellee,**

v.

**Alfred ROVEN, Plaintiff Below, Appellee/Cross Appellant.**

Supreme Court of Delaware.

Submitted: Nov. 19, 1991.
Decided: Feb. 18, 1992.
Rehearing Denied Feb. 26, 1992.

William O. LaMotte, III (argued), and Robert J. Valihura, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, for appellant.

P. Clarkson Collins, Jr. (argued), and Bruce C. Doeg, Morris, James, Hitchens & Williams, Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY and WALSH, JJ.

WALSH, Justice.

This is an appeal from a decision of the Superior Court awarding damages in an action brought by a former director against Citadel Holding corporation ("Citadel") under an indemnification agreement. The court ruled that the director, Alfred Roven ("Roven"), was entitled to reimbursement for sums paid or costs incurred by him to defray litigation expenses in a federal court action brought against him by Citadel. Roven cross-appeals from the Superior Court's denial of prejudgment interest. We affirm the Superior Court's ruling on the merits of the contractual dispute but reverse its upholding of the attorney-client privilege and remand for further proceed-

ings after discovery. We also reverse the trial court's denial of prejudgment interest.

## I

Citadel, a savings and loan holding company, is a Delaware corporation having its principal place of business in Glendale, California. Roven was a director of Citadel from July, 1985 to July, 1988. During most of that time, he beneficially owned 9.8% of Citadel's common stock.

In May of 1987, Citadel and Roven entered into an Indemnity Agreement ("the Agreement"). The stated purpose of the Agreement was to provide Roven with protection greater than already provided him by Citadel's Certificate of Incorporation, Bylaws and insurance. The Agreement begins with recitals describing the intent of the parties as follows:

WHEREAS, the Agent [Roven] is currently serving as a director of the Corporation, and the Corporation wishes the Agent to continue in such capacity. The Agent is willing, under certain circumstances, to continue in such capacity.

WHEREAS, the Agent has indicated that he does not regard the indemnities available under the Corporation's Certificate of Incorporation and Bylaws and available insurance, if any, as adequate to protect him against the risks associated with his service to the Corporation. The Agent may not be willing to continue in office in the absence of the benefits accorded to the Agent under this Agreement.

NOW, THEREFORE, in order to induce the Agent to continue to serve as a director of the Corporation, and in consideration for his continued service, the Corporation hereby agrees to indemnity the Agent as follows:

. . . . .

The body of the Agreement consists of twelve numbered paragraphs, only a few of which are relevant here. Paragraph 1 contains Citadel's general obligation to indemnify Roven. That section provides, in part:

1. The Corporation shall indemnify the Agent against any expense or liability incurred in connection with any threatened, pending or completed action, suit or proceeding, whether civil or criminal, administrative or investigative, to which he is a party or is threatened to be made a party by reason of his service as a director. . . .

This general undertaking to indemnify for "any expense or liability" is limited later in the Agreement, however, by specific exceptions to the obligation. The exception which has pertinence to the present dispute is contained in paragraph 5(e):

5. The Corporation shall not be obligated under this Agreement to make payment in regard to any liability or expense of the Agent:

. . . . .

(e) for an accounting of profits made from the purchase or sale by the Agent of securities of the Corporation within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law or common law;
. . .

Under Paragraph 7 of the agreement Roven is entitled to require Citadel to advance the costs of defending certain lawsuits. This paragraph was invoked by Roven as the basis for his Superior Court breach of contract action. It states:

7. Costs and expenses (including attorneys' fees) incurred by the Agent in defending or investigating any action, suit, proceeding or investigation shall be paid by the Corporation in advance of the final disposition of such matter, if the Agent shall undertake in writing to repay any such advances in the event that it is ultimately determined that the Agent is not entitled to indemnification under the terms of this Agreement.

Roven's claim for indemnification and reimbursement was prompted by a suit brought by Citadel against him in the United States District Court for the Central District of California ("the federal action"). In that proceeding, which is ongoing, Citadel alleged that Roven violated Section 16(b) of the Securities and Exchange Act of

1934, 15 U.S.C. § 78p(b)[1] ("Section 16(b)") by purchasing certain options to buy Citadel stock while he was a director. Roven is contesting the claim that his option purchases violated Section 16(b) and contends that the federal action is but one chapter in a continuing fight for control of Citadel between Roven and another director of Citadel, James J. Cotter. *See, e.g., Roven v. Cotter,* Del.Ch., 547 A.2d 603 (1988).

In support of this latter contention, Roven has advanced certain counterclaims and affirmative defenses in the federal action. These include a charge of illegal corporate control, laches and estoppel. The district judge hearing the federal action, however, concluded in a series of rulings that none of these issues were relevant to a claim under Section 16(b) and has dismissed them.

Nearly two years after the federal action was commenced and following refusal by Citadel to reimburse him for $275,000 in expenses, Roven brought the present suit against Citadel in the Court of Chancery.[2] Roven claimed that his entitlement to reimbursement emanates from both the Agreement and Citadel's Bylaws. He thereafter moved for summary judgment on the contract claim. In granting partial summary judgment the Superior Court ruled that Citadel was required to advance to Roven the costs of defending the federal action. It deferred action on the reasonableness of the amounts sought pending a further hearing.

Before that hearing could be held, however, a discovery dispute arose between the parties concerning the time records maintained by Roven's lawyers in the federal action. Roven resisted Citadel's attempt to discover these documents on the ground they were protected by the attorney-client privilege and the work product doctrine. He argued that records detailing work performed by his attorneys reflect the mental impressions in the ongoing federal action and were therefore protected from discovery.

The Superior Court agreed with Roven's assertion of privilege and ruled that, at that point in the litigation between the parties, Citadel was entitled to discover only the number of hours billed, not the specifics of work performed in those hours. Roven therefore produced copies of the time sheets with work descriptions didacted.

After an evidentiary hearing on the issue of reasonableness of the claimed expenses, the Superior Court ruled that Roven was entitled to an advancement of $928,148.46 for attorneys fees and $58,542.88 for related expenses. Although judgment was entered against Citadel for those amounts, the court disallowed prejudgment or post-judgment interest.

In this Court, Citadel contends the Superior Court erred in construing the advancement provision of the Agreement as applicable to an action under Section 16(b). Even if the advancement provision applies, it argues, it is limited expressly to costs incurred in *defending* litigation and thus Citadel should have been permitted access to the complete descriptive time sheets kept by Roven's lawyers in the federal action to determine which portion of their efforts have been directed to offensive measures.

Roven has cross-appealed. He maintains that the trial court erred by not awarding him pre-judgment interest[3] and by imposing a reasonableness requirement on the advancement provision.

---

1. That statute states, in part:

   For the purpose of preventing the unfair use of information which may have been obtained by such ... director ... by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer ... within any period of less than six months ... shall insure to and be recoverable by the issuer.... This subsection shall not be construed to cover ... any transaction or transactions which the [Securities and Exchange] Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.

2. By stipulation, the case was transferred to Superior Court before trial.

3. Roven also complains that the Superior Court erred by not awarding him post-judgment interest. However, Citadel has conceded this point.

## II

In this Court, Citadel first argues that the Superior Court misconstrued the pertinent provisions of the Agreement. This contention requires us to review the grant of a motion for summary judgment based on the construction of a contract. Our scope of review is therefore plenary. *Gilbert v. El Paso Co.*, Del.Supr., 575 A.2d 1131 (1990).

Initially, Citadel argues that paragraph 7, the advancement provision of the Agreement, was never intended to cover the federal action in any event. To support this proposition, it points to language of the advancement provision which requires Roven to secure any advance by a written promise to repay the advances "in the event that it is ultimately determined that [Roven] is not entitled to indemnification *under the terms of this Agreement.*" (emphasis added) It further argues that the expense of defending the federal action is not subject to indemnification because the Section 16(b) claim does not arise "by reason of his service as a director" as required by the indemnification provision found in Paragraph 1. Rather, it arises by reason of the *fact* that he is a director. Furthermore, Citadel argues, a suit under Section 16(b) is specifically excluded from indemnification by Paragraph 5(e) which limits the scope of Paragraph 1. Because Roven has no right to indemnification, the argument goes, he has no right to advances.

It is an elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract. *Myers v. Myers*, Del.Supr., 408 A.2d 279 (1979); *Dupont v. Wilmington Trust Co.*, Del.Ch., 45 A.2d 510 (1946). Only when there are ambiguities may a court look to collateral circumstances. *Klair v. Reese*, Del.Supr., 531 A.2d 219 (1987). The language of the Agreement must therefore be the starting point. However, it is equally important to focus on the terms of the contract which Roven invoked in the trial court. This was a suit to enforce the *advancement* provision of the Agreement, not the indemnity provision. The language of Paragraph 7 is therefore critical to any analysis of the obligations of the parties.

The language found in that paragraph in no way renders the right to advances dependent upon the right to indemnity. The phrase "under the terms of this Agreement", relied upon by Citadel, refers only to the *ultimate* determination that the Agent is not entitled to indemnification. It describes, and thus conditions, the breadth of the written promise Roven is required to make to secure Citadel's advances. It does not limit Roven's right to those advances initially. Citadel's arguments regarding the exception in Paragraph 5(e) and the phrase "by reason of his service as a director" in Paragraph 1 are therefore irrelevant to the scope of Roven's rights under Paragraph 7. Those provisions speak to Roven's right to indemnification, not advances. It is clear, therefore, that nothing in Paragraph 1 or Paragraph 5(e) compels the conclusion that Roven is not entitled to advances for the costs of defending the federal action.[4]

What is less clear is the meaning of the phrase "any action" found in Paragraph 7. Read literally, that phrase would require the corporation to advance the costs of defending any type of legal proceeding in which Roven was embroiled, no matter how tenuous its relationship to the business of Citadel. This reading would be clearly unreasonable and yield an arbitrary result. *Pike Industries, Inc. v. Middlebury Associates*, 140 Vt. 67, 436 A.2d 725 (1981). In this respect, Paragraph 7 is ambiguous.

Because the intent of the parties cannot be gleaned from the language of the advancement provision, we look elsewhere for that intent. *DuPont v. Wilmington Trust Co.*, 45 A.2d at 517. The

---

4. Conversely, nothing we say here regarding advances should be construed to effect the parties' rights under the indemnification provisions of the Agreement. As will be made clear hereaf-ter, the parties retain their rights to an "ultimate determination" of their responsibilities under those provisions.

obvious source for gaining contractual intent is the recitals found at the beginning of the Agreement because it is there that the parties expressed their purposes for executing the Agreement. *Stabler v. Ramsay*, Del.Ch., 62 A.2d 464 (1948).

The recitals make it plain that the purpose of the Agreement was to provide Roven with greater protection than he already enjoyed under the Certificate of Incorporation, Bylaws and insurance provided by Citadel. Paragraph 7 must therefore provide Roven with a right to advances broader than that provided by these existing sources. The extent of this enhanced protection which Roven could be expected to receive in exchange for his service as a director is material to any construction of the term "any action."

In recognition of the language of the recitals, Citadel argues that the purpose of the Agreement was indeed to provide Roven with expanded protection, but not a broader right to advances. It contends that because Citadel's Bylaws provide Roven with indemnification "to the full extent permitted by the General Corporation Law of Delaware," the *scope* of the rights he enjoys under the Agreement cannot be any broader than the rights conferred by statute. Rather, Citadel argues, the Agreement provides Roven with expanded protection in that his rights are contained in a *contract*, which may only be changed with his consent, as opposed to a statute, which, theoretically at least, could be changed without his approval.

This argument, although novel, is, we believe, flawed. If the General Assembly were to amend Delaware's director indemnification statute with the effect of curtailing the scope of indemnification a corporation may grant a director, the fact that Roven's rights were also secured by contract would be of little use to him. Private parties may not circumvent the legislative will simply by agreeing to do so. *Shaw v. Aetna Life Ins. Co.*, Del.Super., 395 A.2d 384 (1978). Such an agreement might be viewed as *ultra vires* and subject to shareholder attack. *See Findanque v. American Maracaibo Co.*, Del.Ch., 92 A.2d 311 (1952). Citadel's suggested construction of the Agreement provides Roven with no additional protection whatever.

The General Corporation Law of Delaware expressly allows a corporation to advance the costs of defending a suit to a director. 8 *Del.C.* § 145(e).[5] The authority conferred is permissive. The corporation "may" pay an officer or director's expenses in advance. The Agreement, on the other hand, renders the corporation's duty mandatory in providing that expenses *shall* be paid in advance. Under the Agreement, Citadel is required to advance to Roven the costs of defending suits, rather than merely permitting it to make such advances as provided in the statute. The use of the word "shall" therefore simply reflects the parties' intention to provide Roven expanded protection.[6]

Under both the statute and the Agreement, the corporation's obligation to pay expenses is subject to a reasonableness requirement. We can assume that under the statute alone Citadel would never choose to advance unreasonable expenses, although it has the option to make reasonable advances. As the Superior Court correctly

---

**5.** That section states:

(e) Expenses (including attorneys' fees) incurred by an officer or director in defending any civil, criminal, administrative or investigative action, suit or proceeding may be paid by the corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the corporation as authorized in this section. Such expenses (including attorneys' fees) incurred by other employees and agents may be so paid upon such terms and conditions, if any, as the board of directors deems appropriate.

**6.** There is one additional difference between Roven's statutory and contractual rights. The Agreement uses the phrase "any action, suit, proceeding or investigation" while the statute states "any civil, criminal, administrative or investigative action, suit or proceeding." Though worded differently, we can think of no legal matter in which a director would incur costs that would be covered by one standard and not the other. We therefore consider the two phrases to be legal equivalents.

determined, under the Agreement, Citadel is not required to advance unreasonable expenses but is required to advance reasonable ones. Thus, although Citadel need not write Roven a blank check, Roven still achieves far greater protection by reason of his agreement as long as his expenses are deemed reasonable. This interpretation of the disputed provision advances the intent of the parties without producing an absurd result. *Broadway Maintenance Corp. v. Rutgers, State Univ.*, 90 N.J. 253, 447 A.2d 906 (1982).

This interpretation also clears up the ambiguity of the phrase "any action." For example, a demand for advances of costs incurred during a legal proceeding the subject of which was totally unrelated to the business of Citadel would clearly be unreasonable. We think it clear that the advancement provision of the agreement was never intended to cover unrelated legal proceedings.

Citadel next argues that even if the advancement provision of the Agreement applies to the federal action, it should be limited to costs incurred "in defending" that suit. It claims that the language in Paragraph 7 providing for advances to Roven for costs incurred "in defending" a suit should be read literally so as to limit Citadel's liability to expenses incurred in resisting the claims against Roven. The trial court's interpretation, according to Citadel, opens the corporate treasury to Roven so that he can pursue claims unrelated to the action against him. Furthermore, in applying this construction, Citadel asks this Court to hold that the expenses incurred in pursuit of the counterclaims and affirmative defenses (as well as expenses relating to discovery directed to those issues) are not covered by the Agreement because the federal court has ruled that they are not relevant to the issues under Section 16(b).

■■■ When construing a contract, and unless a contrary intent appears, we will give words their ordinary meaning. *Klair v. Reese*, 531 A.2d at 223. In a litigation context the term "defense" has a broad meaning [7] and Citadel has not shown that the parties intended to accord it a restrictive definition in their relationship. Again, restricting the meaning of the phrase would contravene the expressed intent of the parties to expand Roven's protection. Accordingly, we adopt a broad reading of the phrase "in defense". In this light, it seems clear that affirmative defenses are offered "as a reason in law or fact why the plaintiff should not recover." Under the Federal Rules of Civil Procedure, nineteen specific matters may be asserted as well as any other matters which will serve to avoid or defeat an opposing party's claim. 2A *Moore's Federal Practice*, ¶ 8.27[1]. We therefore hold that affirmative defenses are covered by the Agreement.

■■■ The counterclaims present a more difficult problem. Technically, of course, they represent separate causes of action. But under the Federal Rules of Civil Procedure, certain claims must be asserted by a defendant in the same action and others are permissive. *See* Fed.R.Civ.P. 13(a) and (b). Counterclaims arising from the same transaction as the original complaint must be asserted or be thereafter barred. Fed. R.Civ.P. 13(a). Thus, in the federal action at least, any counterclaims asserted by Roven are necessarily part of the same dispute and were advanced to defeat, or offset, Citadel's Section 16(b) claim. We therefore believe the Agreement covers Roven's costs incurred in pursuing the counterclaims he asserted in the federal action as well. The fact that certain defenses may have been stricken in the federal action does not foreclose the question of their reasonableness. As a tactical matter, the assertion of such defenses may be justified even if later found to be without merit and there was no determination in the federal action that such defenses were asserted in bad faith.

7. **Defense.** That which is offered and alleged by the party proceeded against in an action or suit, as a reason in law or fact why the plaintiff should not recover or establish what he seeks. That which is put forward to diminish plaintiff's cause of action or defeat recovery. Evidence offered by accused to defeat criminal charge.
Black's Law Dictionary 377 (5th Ed.1979).

## III

Citadel next contends that the Superior Court erred by denying Citadel access to descriptive time records of Roven's attorneys. This argument requires an interpretation of the attorney-client privilege and a review of the scope of discovery allowed by the trial judge. We address these issues under *de novo* and abuse of discretion standards, respectively. *Read v. News–Journal Co.*, Del.Supr., 474 A.2d 119 (1984).

Citadel first argues that the trial court should have required Roven to invoke the Attorney–Client Privilege for specific documents instead of in blanket fashion for all time sheets. It argues that the burden of persuasion on this issue rested with Roven and that the court below improperly required no more than the bald assertion of the privilege. At the very least, Citadel argues, the court should have inspected the documents *in camera*. Citadel also asserts that Roven waived the privilege by bringing this action, which put the reasonableness of the fees in issue, and by presenting witnesses, attorneys acting for Roven, who relied directly on the documents.

■ Because we have ruled that Roven must demonstrate the reasonableness of his expenditures, the analysis of this issue is shortened somewhat. Assuming, *arguendo*, that the attorney-client privilege and/or work product doctrine apply to the time sheets, and further assuming, *arguendo*, that Roven invoked those doctrines properly, we find a partial waiver of the privilege.

■ It is clear that the disclosure of even a part of the contents of a privileged communication surrenders the privilege as to those communications. D.R.E. 510; *Texaco, Inc. v. Phoenix Steel Corp.*, Del.Ch., 264 A.2d 523 (1970). However, such a waiver does not open to discovery all communications between attorney and client.

*International Business Machines Corp. v. Sperry Rand Corp.*, D.Del., 44 F.R.D. 10 (1968). The so-called "rule of partial disclosure" limits the waiver to the subject matter of the disclosed communication. *Id.* at 13. The exact extent of the disclosure is guided by the purposes behind the rule: fairness and discouraging use of the attorney-client privilege as a litigation weapon. *Id.* In the present case, Roven is required to demonstrate the reasonableness of any expenses for which he demands advances as a prerequisite to recovery. The amount of time expended by his attorneys is the very nub of his claim. Any evidence offered on that issue therefore waives the privilege as to that subject only. Citadel may then discover evidence of the reasonableness of the expenses incurred by Roven in defending the federal action.[8] Moreover, we believe the extent to which these expenses reflect work done on the federal action as opposed to other matters is part of that determination of reasonableness. It is undisputed that certain of Roven's attorneys were employed to represent him, concurrently, in both the federal action and a separate proxy contest in the Court of Chancery. Citadel must be permitted reasonable discovery regarding attorney billing to ensure that only services directly related to the federal action were billed for reimbursement under the Agreement. On remand, the Superior Court should permit additional discovery consistent with this ruling and conduct a further hearing, if necessary, on the reasonableness issue.

## IV

Roven has cross-appealed from the ruling of the Superior Court which denied him either prejudgment or post-judgment interest on sums already paid by him for which advancement is authorized.[9] He claims the court erred by not awarding prejudgment interest. He argues that a party awarded

---

8. Any discovery here authorized should be limited to the quantum of the expenditure, including a specification of work performed. The mental processes or other work product of the attorneys who billed the time is not subject to disclosure.

9. Citadel concedes that Roven is entitled to post-judgment interest. On remand, the Superior Court is directed to award Roven such interest in connection with any ultimate award of damages.

damages for breach of contract by reason of the opposing party's unwarranted refusal of reimbursement is entitled to interest as a matter of right. Citadel counters that, although interest may be a matter of right, the *amount* of interest is a matter of judicial discretion. Pointing to a discovery ruling made from the bench, Citadel argues that the trial court implicitly ruled that Citadel was not in breach of the Agreement until Roven made a showing sufficient to invoke his right to advances. This was not done, claims Citadel, until the eve of trial when Roven finally produced one of his principal attorneys for deposition.

In Delaware, prejudgment interest is awarded as a matter of right. *Moskowitz v. Mayor & Council of Wilmington,* Del.Supr., 391 A.2d 209 (1978). Such interest is to be computed from the date payment is due. *Moskowitz,* 391 A.2d at 210. Although the trial court has some discretion in fixing the amount of interest where there has been inordinate delay caused by one of the parties, the determination of the date when payment was due is ordinarily a question of law subject to plenary review in this Court. *Watkins v. Beatrice Companies, Inc.,* Del.Supr., 560 A.2d 1016 (1989). Where, as here, the underlying obligation to make payment arises *ex contractu,* we look to the contract itself to determine when interest should begin to accrue. *Id.* at 1020.

As we have construed the Agreement, Citadel is required to advance to Roven the costs of all reasonable expenses Roven incurs in defending the federal action. Of course, Citadel may test the reasonableness of any advances demanded and, as he has conceded before this Court, Roven will be subject to a final determination of indemnification. In other words, at some point in the future, pursuant to his written promise required by Paragraph 7, Roven may be forced to give Citadel a full accounting of his expenses and repay any funds which it is determined he is not entitled to receive under the indemnification provisions of the Agreement. This, of course, would merely be the "ultimate determination" alluded to in Paragraph 7.

Under this contractual scenario, Roven is entitled to interest computed from the date of demand.[10] However, we note that Citadel is entitled to the same benefit as a matter of right on any recoupment from Roven. Furthermore, we believe Citadel would be entitled to the same payment due date for purposes of calculating prejudgment interest due it should it be "ultimately determined" Roven must repay some or all of the advances.

## V

In conclusion, we hold that the Agreement requires Citadel to advance to Roven all reasonable costs incurred in defending the federal action and that Roven may not assert the attorney-client privilege or the work product doctrine to defeat Citadel's attempts to discover evidence of the reasonableness of any costs so incurred. Further discovery and a rehearing on evidence previously barred under the attorney-client privilege ruling are thus required. We further hold that Roven is entitled to pre- and post judgment interest on those advances. Finally, we note again that our decision here concerns Roven's right to advances under the Agreement, not his right to indemnification. At the appropriate time in the future, if necessary, the parties may litigate their rights under the indemnification provision of the Agreement.

The decision of the Superior Court is therefore AFFIRMED in part and REVERSED in part and REMANDED for proceedings consistent with this opinion.

---

10. By this, we mean the date when Roven specified the amount of reimbursement demanded *and* produced his written promise to repay.