**GB BIOSCIENCES CORPORATION, GB Biosciences Holdings Inc., and Zeneca Ag Products Holdings Inc., Plaintiffs,**

v.

**ISHIHARA SANGYO KAISHA, LTD., Defendant.**

No. 02–1584.

United States District Court, D. Delaware.

July 3, 2003.

---

Josy W. Ingersoll, Melanie K. Sharp, and John W. Shaw, Esquires of Young, Conaway, Stargatt & Taylor, LLP, Wilmington, for Plaintiffs.

Thomas G. Macauley, Esquire of Zuckerman Spaeder LLP, Wilmington, Of

Counsel: Brian J. Lamb and J. Philip Calabrese, Esquires of Thompson Hine LLP, Cleveland, OH, for Defendant.

## OPINION

FARNAN, District Judge.

Pending before the Court is Plaintiffs' Motion for Summary Judgment (D.I.12). For the reasons discussed below, Plaintiffs' Motion (D.I.12) will be granted.

## BACKGROUND

On December 17, 1997, Plaintiff Zeneca Ag Products Holdings, Inc.[1] ("Zeneca") and Defendant Ishihara Sangyo Kaisha, Ltd. ("ISK") executed a Stock Purchase Agreement ("SPA"). Under the terms of the SPA, Zeneca purchased part of ISK's pesticide business, which included a pesticide manufacturing facility near Houston, Texas known as the Greens Bayou Plant. As part of the acquisition agreement for the Greens Bayou Plant, the parties established a detailed indemnification program in the SPA. (D.I. 13 at A74–A84).

The SPA provides that the seller, ISK, "shall indemnify and hold ... harmless...." the buyer, Zeneca:

> from and against any and all losses, claims (including, without limitation, Environmental Claims), damages (including, without limitation, natural resource damages and punitive damages awarded to a third party), penalties, fines, judgments, settlements, Remediation Costs, costs, fees and expenses (including without limitation, reasonable attorneys, accountants and consultants fees and expenses incurred in connection with any matter indemnifiable hereunder) ....

SPA § 9.2 (D.I. 13 at A75). Under the SPA, ISK agreed it would indemnify Zeneca from losses arising out of several different categories of environmental liabilities, including Site Claims, Off–Site Claims, and ISK Retained Assets and Liabilities, among others. (D.I. 13 at A75–A77). The SPA evidences the parties' understanding that there were potentially significant indemnifiable losses. For example, ISK agreed that it would indemnify Zeneca for up to $85 million of Site Claim losses and for up to $25 million of Off–Site Claim losses. *Id.* at A–79. In the SPA, the parties also agreed on a framework for making and responding to indemnification claims (the "Reimbursement Provision"):

> If the indemnifying party elects not to defend against such claim, then ... in such event ... the indemnified party shall thereupon be entitled, at its option, to assume and control the defense of such claim through counsel of its choice. In such event, the indemnifying party shall promptly reimburse the indemnified party for expenses as they are incurred, provided that the indemnified party shall promptly repay to the indemnifying party the amount of any such reimbursed expenses paid to it if it shall be judicially determined by judgment or order not subject to further appeal or discretionary review that such indemnified party is not entitled to be indemnified by the indemnifying party under the Article 9.

SPA § 9.4(a) (D.I. 13 at A77).

After Zeneca acquired the Greens Bayou Plant, the Port of Houston Authority ("PHA") notified Plaintiffs about alleged environmental contamination found in, under, or on properties adjacent to the Greens Bayou Plant. The PHA claimed that Plaintiffs were responsible for remediating the alleged contamination (the "PHA Environmental Claims"). When these

---

**1.** Plaintiff Zeneca Ag Products Holdings Inc. is actually the successor by assignment to Zeneca Holdings Inc.'s rights under the Stock Purchase Agreement. For purposes of this Memorandum Opinion, the Court will simply refer to both entities as Zeneca.

claims arose, Plaintiffs notified ISK that it would be seeking indemnification under the SPA for losses related to the PHA Environmental Claims.

Subsequently, ISK and Zeneca executed a letter agreement dated August 9, 2000, that memorialized their agreement on the characterization and administration of the PHA Environmental Claims. ("August 9 Letter," D.I. 13 at A111–A114). In the August 9 Letter, ISK recognized that the PHA Environmental Claims are "within the definitions of one or more of the Site Claims, Off–Site Claims ... and/or ISK Retained Assets and Liabilities under the SPA.... Accordingly,... [Zeneca's] Losses would be indemnifiable by us...." *Id.* at A112.

In February 2001, the PHA filed a lawsuit in Texas state court against Plaintiffs and its affiliates regarding the PHA Environmental Claims. Plaintiffs submitted, and continues to submit to ISK periodic requests for reimbursement of attorneys' and consultants' fees and expenses incurred in connection with the PHA Environmental Claims. ISK has not paid all amounts for which Plaintiffs have sought reimbursement. (D.I. 21 at 11). Plaintiffs filed the instant action to force ISK to promptly fulfill its reimbursement obligations under the SPA.

Plaintiffs contend that the SPA requires ISK to reimburse Plaintiffs for expenses relating to environmental claims as those expenses are incurred. Plaintiffs further contend that the SPA establishes a mechanism for ISK to seek repayment, via judicial proceedings, after such payments have been made, if ISK believes the expense reimbursement was improper. In response, ISK contends that Plaintiffs must provide ISK with sufficient information to determine the reasonableness and connectedness of the claimed fees and expenses before ISK is obligated to reimburse Plaintiffs. Plaintiffs now move for summary judgment contending that the parties' dispute can be resolved as a matter of law based on the clear and unambiguous language of the SPA.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Valhal Corp. v. Sullivan Assocs., Inc.,* 44 F.3d 195, 200 (3d Cir.1995). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

To defeat a motion for summary judgment, Rule 56(c) requires the non-moving party to show that there is more than:

> some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations and punctuation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### PARTIES' CONTENTIONS

By their Motion, Plaintiffs contend that the language of the SPA is clear and unambiguous. Plaintiffs further contend that ISK, in the August 9 Letter, acknowledged that losses arising out of the PHA Environmental Claims are indemnifiable losses. Therefore, Plaintiffs contend that the clear language of the SPA Reimbursement Provision ("Section 9.4(a)"), which provides that "the indemnifying party shall promptly reimburse the indemnified party for expenses as they are incurred," governs the situation at hand. (D.I. 13 at A77). In short, Plaintiffs contend that ISK, as the indemnifying party, must, without qualification, pay Plaintiffs' reimbursable expenses as they are tendered.

Plaintiffs contend that ISK's assertion that Plaintiffs must present some quantum of proof regarding the reasonableness and connectedness of the expenses flies in the face of the plain language of the Section 9.4(a). Plaintiffs contend that ISK's interpretation ignores the express contractual mechanism for determining whether a request for reimbursement should be paid. Section 9.4(a) contains a proviso that limits the indemnified parties' right to payment as follows: "provided that the indemnified party shall promptly repay to the indemnifying party the amount of any such reimbursed expenses paid to it if it shall be judicially determined by judgment or order not subject to further appeal or discretionary review that such indemnified party is not entitled to be indemnified by the indemnifying party under this Article 9." (D.I. 13 at A77).

Plaintiffs contend that the proviso makes clear that the parties contemplated that a dispute as to whether an expense should be reimbursed may arise and that the parties agreed that the resolution of such a dispute would occur after reimbursement was made. Plaintiffs acknowledge that Delaware law demands that all parties to a contract act reasonably and in good faith; they are not suggesting that the proviso exposes ISK to unreasonable or bad faith conduct. Rather, Plaintiffs contend that the proviso demonstrates the parties' allocation of the transaction costs involved in resolving the propriety of reimbursed expenses. Plaintiffs contend that Section 9.4(a) places the burden on ISK to provide indemnification before contesting the propriety of the reimbursed loss. To require Plaintiffs to demonstrate the propriety of the expenses prior to reimbursement would, in Plaintiff's words, "turn the indemnification provisions on their head." (D.I. 13 at 23).

Plaintiffs also contend that the SPA contains no condition precedent to reimbursement and that to imply one as ISK suggests would undercut the purpose and language of the parties' agreement, which is memorialized in a detailed 100 page SPA that contains an integration clause (Section 12.10, D.I. 13 at A106). Plaintiffs contend the general structure of the SPA contradicts ISK's refusal to pay. For example, the SPA provides that ISK is required to indemnify Plaintiffs for losses from "any actual or alleged" environmental claims. (D.I. 13 at A76). Plaintiffs contend this language evidences the parties' intent to shift the risk of loss to ISK as soon as it arises, even if it the loss is simply alleged and not yet proven. Plaintiffs also contend that the high indemnity limits for environmental claims in the SPA (*e.g.,* $85 million for Site Claims and $25 million for Off–Site Claims) demonstrates the parties' intent to place the significant risk attached to the purchase of allegedly contaminated property on the seller, ISK.

In response, ISK contends that the real issue in dispute is not the timing of the indemnity payments under the SPA, but is

whether Plaintiffs' fees and expenses meet the threshold requirements of being both "reasonable" and "incurred in connection with any indemnifiable matter" under the SPA. (D.I. 13 at A75). Further, ISK contends that Plaintiffs' Motion is premature because it was filed before any discovery was commenced. ISK contends that discovery is necessary to determine if Plaintiffs' expenses and fees are reasonable and connected to an indemnifiable matter.

ISK agrees that the relevant provisions of the SPA are clear and unambiguous; however, ISK contends that they do not mean what Plaintiffs contend they mean. Relying on *Citadel Holding Corporation v. Roven,* 603 A.2d 818 (Del.1992), ISK argues that an advancement provision does not relieve an indemnified party of its obligation to demonstrate the reasonableness and connectedness of the fees and expenses submitted for reimbursement. ISK contends *Roven* stands for the following propositions: (1) "the reasonableness of attorneys' fees and expenses is a prerequisite to a right of advancement"; (2) "the party seeking advancement under an indemnity agreement bears the burden of proving reasonableness"; (3) "the indemnifying party is entitled to conduct discovery on the reasonableness of the claimed fees and expenses"; and (4) the "invoices documenting the attorneys' fees and expenses cannot be withheld ... under the work-product doctrine or the attorney client privilege because Plaintiffs have put them at issue by seeking indemnification for them." (D.I. 21 at 16–17). For these reasons, ISK contends Plaintiffs' Motion should be denied.

In the alternative, ISK contends that if Plaintiffs are correct in their reading of the SPA, Plaintiffs' course of conduct has altered the terms of the contract. ISK contends that because Plaintiffs provided ISK with complete copies of the invoices for which they sought reimbursement for over one year, Plaintiffs cannot now alter their conduct and provide incomplete invoices.

### DISCUSSION

■ "[D]isputes involving the interpretation of unambiguous contracts are resolvable as a matter of law, and are, therefore, appropriate cases for summary judgment." *Tamarind Resort Associates v. Government of Virgin,* 138 F.3d 107, 110 (3d Cir.1998).

■ The interpretation of the SPA is governed by Delaware law. (D.I. 13 at A104). Under Delaware law, the interpretation of contract language is a question of law. *O'Brien v. Progressive N. Ins. Co.,* 2000 Del.Super. LEXIS 443, 2000 WL 33113833, at *4 (Del.Super.Ct. Dec. 18, 2000) (citing *Rhone–Poulenc Basic Chems. Co. v. American Motorists Ins. Co.,* 616 A.2d 1192, 1195 (Del.1992)). The use of extrinsic evidence to interpret "clear and unambiguous language" in a contract is not permitted. *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.,* 711 A.2d 45, 56 (Del.Super.Ct.1995), modified on other grounds, 1996 Del.Super. LEXIS 571, 1996 WL 769627 (Del.Super.Ct. Dec. 24, 1996). The parties' intent is dispositive when a court construes a contract; however, when the language is unambiguous and has "an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent." *Id.* (citing *Citadel Holding Corp. v. Roven,* 603 A.2d 818, 822 (Del. 1992); *E.I. du Pont de Nemours & Co. v. Shell Oil Co.,* 498 A.2d 1108, 1113 (Del. 1985)); *see also Fox v. Rodel, Inc.,* 1999 U.S. Dist. LEXIS 15502, 1999 WL 803885, at *8 n. 14 (D.Del. Sept.13, 1999). Unambiguous contract language must be construed in accordance with how it would be understood by "an objective reasonable third party." *Sanders v. Wang,* 1999

Del.Super. LEXIS 203, 1999 WL 1044880, at *6 (Del.Ch. Nov.8, 1999).

■ Applying the above standards to the facts of the instant case, the Court concludes, and the parties agree,[2] that Section 9.4(a) of the SPA is unambiguous. Section 9.4(a) provides that "the indemnifying party shall promptly reimburse the indemnified party for expenses as they are incurred." (D.I. 13 at A77). The Court concludes that ISK's assertion that Plaintiffs must present some quantum of proof regarding the reasonableness and connectedness of the expenses is contrary to the plain language of the Section 9.4(a).

Section 9.4(a) contains a proviso that limits the indemnified parties' right to payment as follows: "provided that the indemnified party shall promptly repay to the indemnifying party the amount of any such reimbursed expenses paid to it if it shall be judicially determined by judgment or order not subject to further appeal or discretionary review that such indemnified party is not entitled to be indemnified by the indemnifying party under this Article 9." (D.I. 13 at A77). The plain language of the proviso indicates that the parties considered that a dispute regarding the propriety of a reimbursed expense may arise and that such a dispute was best resolved after reimbursement was made. In the Court's view, the proviso also demonstrates the parties' allocation of the transaction costs involved in resolving the propriety of reimbursed expenses. Section 9.4(a) places the burden on ISK to reimburse Plaintiffs before contesting the propriety of the reimbursed loss. ISK accepted this burden in order to induce Plaintiffs to purchase property with potential environmental contamination. Although Plaintiffs are obligated under Delaware contract law to act reasonably and in good faith, one might wonder why ISK obligated itself

under such an open-ended reimbursement agreement. The high indemnity limits for environmental claims in the SPA (*e.g.*, $85 million for Site Claims and $25 million for Off–Site Claims) demonstrate the significant risk attached to the purchase of the allegedly contaminated property, and in the Court's view, ISK accepted the possibly high transaction costs related to possible reimbursement disputes in order to convince Plaintiffs to purchase the high-risk property. ISK's refusal to reimburse Plaintiffs' expenses unless Plaintiffs first demonstrate the reasonableness and connectedness of their expenses is a post-contractual attempt to shift the transaction costs back to Plaintiffs. ISK obtained the benefit it desired from the SPA, and ISK cannot now disavow its contractual obligation to "promptly reimburse the indemnified party for expenses as they are incurred."

The parties drafted and executed a detailed and precise SPA that exceeds one hundred pages. The plain language of Section 9.4(a) includes no conditions precedent to reimbursement and to imply such conditions or to import them from another section of the SPA would undercut the parties' transaction. Had the parties intended to require Plaintiffs to establish the reasonableness and connectedness of their expenses prior to reimbursement, the parties and their attorneys could have easily inserted the necessary language in Section 9.4(a).

Further, ISK's reliance on *Roven* is misplaced. In *Roven*, the court interpreted ambiguous contract language and determined that the parties intended that a director would have to demonstrate that his expenses were reasonably related to indemnifiable proceedings before he was entitled to advancement of expenses. *Ro-*

**2.** "ISK agrees that the relevant provisions of the SPA are clear and unambiguous." ISK's

Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, D.I. 21 at 15.

*ven,* however, does not, as ISK suggests, control this case. In the instant case, the Court is interpreting clear and unambiguous contract language that clearly conveys the intent of the parties. Unlike the advancement provision at issue in *Roven,* the Reimbursement Provision of Section 9.4(a) sets forth the mechanism by which disputes regarding the propriety of the reimbursement requests, which would include their reasonableness and connectedness, are to be resolved. Because of the clear language of Section 9.4(a), the Court does not need to read the SPA to discern the parties' intent regarding who is to bear the transaction costs of disputes regarding reimbursement requests. Section 9.4(a) clearly provides that ISK is to "promptly reimburse the indemnified party for expenses as they are incurred," and if ISK wants to dispute the propriety of those expenses, it is to bear the costs of doing so. There is no condition of reasonableness or connectedness in the language of Section 9.4(a), and because the language of Section 9.4(a) is unambiguous, there is no reason to imply such conditions as the court did in *Roven.* In *Roven,* the failure to include, in the advancement provision, a mechanism for resolving disputes regarding the propriety of advancement requests made the over-inclusive language "all actions" ambiguous. The language of Section 9.4(a) avoids such ambiguity and clearly reads that ISK accepted the burden of indemnifying Plaintiffs on an ongoing basis and resolving any disputes regarding the reasonableness or connectedness of Plaintiffs' claims post-payment by a lawsuit brought by ISK. In sum, *Roven* is distinguishable from the instant case because in *Roven* the court held that the parties intended that a director must demonstrate the propriety of advances before receiving them, whereas here, Section 9.4(a) unambiguously provides that reimbursement is to occur promptly on submission of claims and that disputes are to be resolved after reimbursement and on ISK's initiative.

■ Finally, ISK contends that the word "expenses" in Section 9.4(a) refers only to Plaintiffs' attorneys' pass through expenses, such as copying and faxing, and not to Plaintiffs' attorneys' fees. Because the language of Section 9.4(a) is unambiguous, the Court must construe it in accordance with how it would be understood by "an objective reasonable third party." *Sanders,* 1999 WL 1044880, at *6. An expense is defined as a "financial burden or outlay: cost." *Websters Ninth New Collegiate Dictionary* (1986). Accordingly, the Court concludes that a reasonable third party would not understand expenses as used in Section 9.4(a) to refer to only one type of cost incurred by Plaintiffs and not another. Attorney's fees are a cost; thus, the Court concludes that they fall within the ambit of reimbursable expenses.

## CONCLUSION

For the reasons discussed, Plaintiffs' Motion for Summary Judgment (D.I.12) will be granted.

An appropriate Order will be entered.

## *ORDER*

At Wilmington this 3rd day of July 2003, for the reasons set forth in the Opinion issued this date;

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment (D.I.12) is *GRANTED.*