**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

October 23, 2025

Michael A. Barlow, Esquire
Quinn Emanuel Urquhart & Sullivan, LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801

David E. Wilks, Esquire
Wilks Law, LLC
4250 Lancaster Pike, Suite 200
Wilmington, Delaware 19805

RE: *Shareholder Representative Services, LLC v. Alexion Pharmaceuticals, Inc.*,
Civil Action No. 2020-1069-MTZ

Dear Counsel,

As you know, the Court has issued post-trial opinions on liability for failure to pay a milestone payment and breach of an efforts clause (the "Liability Opinion"),[1] and damages for breach of that efforts clause (the "Damages Opinion," and with the Liability Opinion, the "Opinions").[2] The Damages Opinion adopted the "modern approach" of a floating legal rate, compounded quarterly, for both pre- and post-judgment interest.[3] It directed the parties to confer "on an interest calculation consistent with the methodology adopted in [the Damages Opinion]" and submit a proposed stipulated order implementing this Court's holdings announced in the Opinions.[4] Neither party moved for reargument or reconsideration. But the parties were unable to agree on the interest calculation, and submitted supplemental briefing on August 8, 2025.[5]

---

[1] *S'holder Representative Servs. LLC v. Alexion Pharms., Inc.*, 2024 WL 4052343 (Del. Ch. Sep. 5, 2024) [hereinafter "Liability Op."].

[2] *S'holder Representative Servs. LLC v. Alexion Pharms., Inc.*, 341 A.3d 513 (Del. Ch. 2025) [hereinafter "Damages Op."].

[3] *Id.* at 551.

[4] *Id.*

[5] Citations in the form of "DB" refer to Alexion Pharmaceutical Inc's Memorandum Concerning Prejudgment Interest, available at docket item ("D.I.") 422. Citations in the form "PB" refer to Plaintiff and Counterclaim Defendant's Supplemental Brief in Support of Pre- and Post-Judgment Interest Calculation, available at D.I. 423.

This letter resolves the parties' disputes. The first is whether interest on the unpaid milestone should be simple or compound. The second concerns the rate and accrual date for interest on damages from the breached efforts clause. This letter assumes familiarity with the earlier Opinions and their defined terms.

### A. Unpaid Milestone

For Milestone 1, the parties agree (1) the payment due date is October 6, 2022, (2) the interest rate in Section 3.8(e) of the Merger Agreement applies to prejudgment interest, and (3) the applicable rate of interest is 7.25%.[6] Section 3.8(e) states:

> "The Buyer shall pay interest on any Earn-Out Payment that is not paid on or before the date such payments are due under this this [sic] Agreement at an annual rate equal to one percent 1% plus the prime rate as published in *The Wall Street Journal* in effect on the date such payment was required to be made calculated on the total number of days payment is delinquent."[7]

The parties dispute how interest should be calculated. SRS seeks quarterly compounding consistent with the Damages Opinion, while Alexion contends Section 3.8(e)'s phrase "calculated on the total number of days payment is delinquent" implies simple per diem interest.[8] SRS prevails.

As the Damages Opinion explained in the context of the breached efforts clause, this Court's "modern approach calls for compounding interest."[9] Section 3.8(e)'s plain text does not call for anything different for Milestone 1. The language directing interest be "calculated on the total number of days payment is delinquent" specifies a per diem or daily accrual basis, not whether interest is simple or

---

[6] DB 10; PB 5–6.

[7] JX 1 § 3.8(e) [hereinafter "Merger Agr."].

[8] DB 10–11; PB 5–8.

[9] Damages Op., 341 A.3d at 551 (citing *ITG Brands, LLC v. Reynolds Am., Inc.*, 2025 WL 670818, at *12–14 (Del. Ch. Mar. 3, 2025) (collecting cases)).

compound.[10]  Compound interest is also appropriate for Milestone 1 based on market realities and Alexion's sophistication; Alexion makes no argument otherwise.[11]

The interest for payment on Milestone 1 shall accrue from the agreed due date, at the agreed contract rate, compounded quarterly.  I trust the parties can do the math from here.

### B. Efforts Clause

The Damages Opinion awarded SRS the lost present expected value of Milestones 2 through 8, which were not achieved.[12]   In post-trial briefing, SRS used Section 3.8(e)'s "prime rate" for interest on Milestone 1 as well as Milestones 2 through 8.[13]  The Damages Opinion specified the legal rate, without comment on any contractual rate.[14]  Alexion did not move for reargument.

In supplemental briefing, the parties dispute whether Section 3.8(e)'s interest rate supplants the legal rate for unachieved Milestones.  SRS argues Section 3.8(e)'s contract rate applies only to Milestones that were actually achieved, and the legal rate applies to the rest.  Alexion urges the Court to use Section 3.8(e)'s contract rate for all Milestones.

In pursuit of getting this right, and in the absence of prejudice to either party given the opportunity for briefing, I will set aside SRS's flipflop on position and

---

[10] *See, e.g.*, *Fortis Advisors LLC v. Johnson & Johnson*, 2024 WL 4048060, at *54 (Del. Ch. Sep. 4, 2024) (interpreting language requiring interest "calculated on the basis of the actual number of days elapsed over three hundred sixty (360) from the date such amount should have been paid" to calculate interest on a daily accrual basis, compounded in the Court's discretion).

[11] *See Brandin v. Gottlieb*, 2000 WL 1005954, at *29 (Del. Ch. July 13, 2000); *Fortis*, 2024 WL 4048060, at *54 (concluding "[the defendant]'s sophistication, plus the years that it benefitted from non-payment of the earnout, support compound rather than simple interest").

[12] Damages Op., 341 A.3d at 551.

[13] D.I. 364 at 71, 77 n.7, 78 n.8.

[14] Damages Op., 341 A.3d at 551.

Alexion's failure to move for reargument,[15] and take up the issue as the parties presented it for the first time in supplemental briefing.[16] SRS's reading has some support. Section 8.3(e) specifies the interest rate "on any Earn-Out Payment that is not paid on or before the date such payments are due."[17] Milestones 2 through 8 never came due. I cannot conclude the parties to the Merger Agreement expressly agreed to apply the contract rate to lost expected value arising from a breach of the efforts provision.

But the principles of expectation damages support using the contract rate. "Under Delaware law, the standard remedy for breach of contract is based on the reasonable expectations of the parties that existed before or at the time of the breach."[18] "This principle of expectation damages is measured by the amount of money that would put the promisee in the same position as if the promisor had performed the contract."[19] When determining expectation damages, Delaware courts award an amount that gives the injured party "the benefit of its bargain[,]"[20] by putting "the nonbreaching party in as good a position as he would have been in had the contract been performed, and no better."[21] Excessive interest is an

---

[15] This Court has discretion to consider a late-filed argument if the opposing party "suffered no prejudice" from the delay and its consideration. *See Rostowsky v. Hirsch*, 2024 WL 4491902, at *7 n.111 (Del. Ch. Oct. 15, 2024).

[16] *See e.g.*, *Dishmon v. Fucci*, 32 A.3d 338, 346 (Del. 2011).

[17] Merger Agr. § 3.8(e).

[18] *PharmAthene, Inc. v. Siga Techs., Inc.*, 2014 WL 3974167, at *7 (Del. Ch. Aug. 8, 2014), *aff'd*, 132 A.3d 1108 (Del. 2015).

[19] *Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001).

[20] *Leaf Invenergy Co. v. Invenergy Renewables LLC*, 210 A.3d 688, 695 (Del. 2019).

[21] Damages Op., 341 A.3d at 526; Dan B. Dobbs, *Law of Remedies: Damages—Equity—Restitution* § 12.1(1), at 23 (2d ed. 1993) (footnotes omitted); *see Duncan*, 775 A.2d at 1022, 1022 n.6; *Brandin v. Gottlieb*, 2000 WL 1005954, at *29 (Del. Ch. July 13, 2000) ("Each element of the monetary damages I have awarded consists of funds that [defendant] diverted to his advantage and that-but for his breach of his obligations to [plaintiff]-would have been [. . .] paid out to [plaintiff].").

"undeserved windfall for the plaintiffs and an unjustified penalty for the defendants."[22]

Had Alexion performed its obligations and any of Milestones 2 through 8 been achieved, any overdue earnout payment would have accrued interest at Section 3.8(e)'s agreed rate of prime plus 1%. That rate represents the benefit of the bargain—the measure of expectation damages, and no more. Syntimmune's stockholders bargained for that rate in the event of delayed payments, so they should not now receive the windfall of a higher interest rate. During the relevant period, the statutory rate has been approximately 1% higher than the contract's prime-plus-1% rate.[23]

*Fortis* is again instructive. There, the merger agreement also provided a prime-based interest rate for late earn-out payments upon "the achievement" of milestones, specifying that rate applied "[i]f any Earnout Payment . . . is not paid in full" by the contractual deadline.[24] *Fortis* applied the contract's prime-based rate

---

[22] *Ryan v. Tad's Enters., Inc.*, 709 A.2d 682, 705 (Del. Ch. 1996), *aff'd*, 693 A.2d 1082 (Del. 1997).

[23] 6 *Del. C.* § 2301 (defining Delaware's legal rate as 5% over the Federal Reserve discount rate); U.S. Prime Rate History, FedPrimeRate, http://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm; Federal Discount Rate (DISC) Historical Data, Nasdaq, https://www.nasdaq.com/market-activity/fixed-income/disc/historical?page=16&rows_per_page=10&timeline=y5.

[24] *Fortis Advisors LLC v. Johnson & Johnson*, C.A. No. 2020-0881-LWW, Transmittal Declaration of Elizabeth A. Mullin Pursuant to 10 Del. C. Section 3927 in Support of Opening Brief in Support of Defendants' Partial Motion to Dismiss (with Certificate of Service), at D.I. 24, Ex. A § 2.07(d)(vii) ("If *any Earnout Payment payable pursuant to this Section 2.07 is not paid in full* within ten (10) business days after Parent shall have delivered notice to the Stockholders' Representative of the *achievement* of the applicable Milestone pursuant to Section 2.07(c) (or, if any Milestone is otherwise determined to be payable pursuant to this Section 2.07 but Parent failed to provide such required notice), *then interest shall accrue on such unpaid amount at a rate per annum equal to the prime rate of interest reported from time to time in The Wall Street Journal*, calculated on the basis of the actual number of days elapsed over three hundred sixty (360), from the date such amount should have been paid pursuant to the terms of this Agreement (assuming for this purpose that the applicable notice required pursuant to Section 2.07(c) was timely delivered) to the date of actual payment in full of such amount.") (emphasis added).

to the contract damages for each milestone, including those never achieved, because the prime-based rate "was not only agreed upon by the parties, but also considered the best measure of the commercial lending rate used by banks for loans to creditworthy customers."[25] So too here.

SRS and Alexion also dispute whether interest should run from the date of breach of the efforts provision, or the date each Milestone would be due. On this, Delaware law is clear: the date payment was due.[26] Prejudgment interest is measured from the date on which damages began to accrue; in other words, the date on which the plaintiff was owed funds the defendant should have paid.[27] This is a matter of law, not discretion.[28] Where the underlying obligation to make payment arises from

---

[25] *Fortis*, 2024 WL 4048060, at *54–55 (applying the contract rate to contract claims and the legal rate to fraud claim).

[26] *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992) ("In Delaware, prejudgment interest is awarded as a matter of right. Such interest is to be computed from the date payment is due.") (citation omitted).

[27] *Vivint Solar, Inc. v. Lundberg*, 2024 WL 2755380, at *37 (Del. Ch. May 30, 2024); *Am. Gen. Corp. v. Cont'l Airlines Corp.*, 622 A.2d 1, 13–14 (Del. Ch. 1992), *aff'd,* 620 A.2d 856 (Del. 1992) (holding "[t]he date of the breach[ ] is not the appropriate starting point for the computation of interest" and instead the appropriate date from which to measure prejudgment interest is "the date on which [ ] damages began to accrue"); *Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.*, 2017 WL 6371162, at *2 (Del. Dec. 12, 2017) (TABLE) ("Generally, pre-judgment interest accumulates from the date payment was due to a party, or alternatively 'when the plaintiff first suffered a loss at the hands of the defendant.'"); *Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011) ("[I]n addition to the principle that prejudgment interest in Delaware cases is awarded as a matter of right, the general rule is that interest accumulates from the date payment was due the plaintiff, because full compensation requires an allowance for the detention of the compensation awarded and interest is used as a basis for measuring that allowance.") (internal quotations and citations omitted); *In re Mindbody, Inc., S'holder Litig.*, 2023 WL 7704774, at *10 (Del. Ch. Nov. 15, 2023) (noting "the compensatory and disgorgement purposes of prejudgment interest arise from the premise that the damages award was 'plaintiff's money'—money that the plaintiff would have had in her possession absent wrongdoing").

[28] *Citadel*, 603 A.2d at 826.

contract, the Court looks to the contract itself to determine when interest should begin to accrue.[29]

Again, *Fortis* paves the way. There, this Court similarly discounted each milestone payment to the date of breach to reflect its present value, but calculated interest from the contractual payment deadlines.[30]

This framework aligns with the idea behind expectation damages: had the contract been performed, the milestone payments would not have been owed before their due dates. Alexion's breach did not deprive SRS of funds it was entitled to receive before those due dates. And SRS and Syntimmune's stockholders did not suffer any loss from not being paid before those dates. Awarding interest before the due dates would place SRS in a better position than it would have been in had the contract been fully performed. Alexion's calculation confirmed this point.[31]

The Merger Agreement specifies when each earnout payment would be due if earned.[32] The trial record provides evidence as to when those payments would be earned absent the breach; the Damages Opinion identified Milestone Expected

---

[29] *Id.*

[30] *Fortis*, 2024 WL 4048060, at *54–55.

SRS's cited authorities are inapposite. In *Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.*, the plaintiff paid a monetary overcharge on a specific date, so the loss occurred that day when the plaintiff's money left its hands. 2017 WL 6371162, at *1– 2. *Delphi* does not hold that the breach date always starts interest calculations even if the monetary loss happens later. SRS also cites two cases addressing breach of an obligation to negotiate in good faith, without any fixed payment date: lacking a concrete accrual point, the courts treated the breach date as the most practical proxy for when the loss occurred. *See generally PharmAthene v. SIGA Techs., Inc.*, 2011 WL 4390726 (Del. Ch. Sep. 22, 2011), *aff'd in part*, *rev'd in part*, 67 A.3d 330 (Del. 2013); *PharmAthene, Inc. v. SIGA Tech., Inc.*, 2014 WL 3974167 (Del. Ch. Aug. 8, 2014), *aff'd*, 132 A.3d 1108 (Del. 2015); *Murphy Marine Servs. of Del., Inc. v. GT USA Wilmington, LLC*, 2022 WL 4296495 (Del. Ch. Sep. 19, 2022).

[31] DB 5–6 (stating that SRS's proposed method for calculating interest adds a windfall of more than $46 million).

[32] Merger Agr. §§ 1.1, 3.8(b), 3.8(e).

Achievement Dates and Payment Due Dates determined by a preponderance of the evidence.[33]  Prejudgment interest should accrue only from Payment Due Dates that have passed: only in those instances has Alexion's breach deprived SRS of money Alexion would have otherwise paid.[34]  Only Milestones 2 (projected due July 30, 2025) and 3 (projected due September 29, 2025) would have expired before the expected judgment date.  The remaining milestones (due beginning May 17, 2028) have not yet matured and so do not accrue prejudgment interest.

Thus, for Milestones 2 and 3, interest shall be calculated at the contract rate of prime plus 1%, accruing as of the respective Payment Due Dates, compounded quarterly.  From here, I trust the parties can do the math.  The parties should attempt again to submit a stipulated implementing order consistent with this methodology.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*

---

[33] Damages Op., 341 A.3d at 545–46.

[34] *Id.*