# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| JMÎCHAEĹE KELLER,<br><br>          Plaintiff,<br><br>       v.<br><br>STEEP HILL, INC.,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)  C.A. No. 2022-0098-MTZ<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Date Submitted: May 17, 2023
Date Decided: August 31, 2023

Bruce E. Jameson, Eric J. Juray, Jason W. Rigby, Robert B. Lackey, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; Thomas H. Vidal, Shamar Toms-Anthony, PRYOR CASHMAN LLP, Los Angeles, California, *Attorneys for Plaintiff Jmîchaeĺe Keller.*

David A. Felice, BAILEY & GLASSER, LLP, Wilmington, Delaware; Evan W. Bolla, Megan Dubatowka, HARRIS ST. LAURENT & WECHSLER LLP, New York, New York, *Attorneys for Defendant Steep Hill, Inc.*

ZURN, Vice Chancellor.

Plaintiff Jmîchaeĺe Keller, a former director and officer of Steep Hill, Inc. ("Steep Hill" or the "Company"), brings this indemnification action pursuant to the Company's bylaws, an indemnification agreement, and 8 *Del. C.* § 145(c). Steep Hill believed Keller's alleged mismanagement and fiduciary misconduct resulted in regulatory troubles for the Company. Seeking compensation, Steep Hill initiated arbitration proceedings against Keller, and Keller filed counterclaims and sought advancement. Keller successfully defended against Steep Hill's claims in the arbitration. He now seeks indemnification. There is no serious dispute that Keller is a covered person, that the arbitration was a covered proceeding, or that he prevailed on Steep Hill's claims against him. If the story were that simple, this indemnification action would be easy.

It is not that simple. Keller became a Steep Hill director and officer through a consulting agreement between the Company and Delft Blue Horizons B.V. ("Delft Blue"), an entity Keller owns and controls through a holding company. When Steep Hill initiated the arbitration, alongside its full-throated claims against Keller, it asserted conclusory breach of contract claims against Delft Blue on the theory that Keller's conduct as a director and officer caused Delft Blue to breach the consulting agreement. Keller's initial defense in the arbitration was to argue that he was not a party to the consulting agreement between Delft Blue and Steep Hill, and could therefore not be forced to arbitrate. The arbitrator found Keller was a third-party

1

beneficiary to that agreement and brought him into the proceedings. From there, Keller filed a response to the arbitration demand, and he and Delft Blue asserted counterclaims.

Then, Keller made an advancement demand. Seeking to avoid advancing any expenses, Steep Hill replied with a letter claiming it was withdrawing the breach of fiduciary duty claims and any other claims based on Keller's conduct as a director or officer. This proved true only in form, as Steep Hill continued to claim that Keller's actions as a director and officer caused Delft Blue to breach the consulting agreement. The arbitrator ruled against Steep Hill on all its claims, and against Keller and Delft Blue on all their counterclaims.

Keller now seeks indemnification for the fees and expenses he and Delft Blue incurred on both defense and offense in the arbitration. The matter is presented on cross-motions for summary judgment. The main point of contention is whether Keller is entitled to indemnification for fees incurred in defending the claims against Delft Blue and in bringing Delft Blue's counterclaims.

The undisputed record makes clear that Steep Hill's breach of contract claims against Delft Blue were brought by reason of the fact Keller was a Company officer or director: it merely reframed its fiduciary duty claims as contract claims for the purpose of avoiding its advancement obligations. A broad reading of Section 145 supports the conclusion that Keller is entitled to indemnification for fees and

2

expenses nominally incurred by Delft Blue. Keller wholly, but indirectly, owns Delft Blue, and so as a practical matter he incurred those fees. On these facts, I find that Keller may recover these expenses under 8 *Del. C.* § 145(c)(1).

Thus, Keller is entitled to indemnification for nearly all of his fees and expenses incurred in the arbitration; some claims, relating to the disclosure of nonpublic information, were not brought by reason of his indemnified positions. Keller is also entitled to proportionate fees on fees.

## I.    BACKGROUND

Steep Hill operates commercial cannabis laboratories in the United States.[1] These labs test cannabis before it is released to the market "to ensure that it is free of contaminants, including pesticides prohibited by state law and regulated" by the State of California.[2]

Keller invested in Steep Hill on May 22, 2015, and became its President and CEO later that year.[3] His employment was memorialized in a consulting agreement between Steep Hill and Delft Blue, a Dutch entity Keller controls and wholly, but

---

[1] Docket Item ("D.I.") 5 at Ans. ¶ 3; D.I. 19 at Op. Br. [hereinafter "DOB"], Ex. 1, at 2 [hereinafter "Arb. Award"].

[2] Arb. Award at 2.

[3] D.I. 5 at Ans. ¶¶ 3–4.

indirectly, owns.[4]  That consulting agreement was replaced by a second consulting agreement on January 1, 2018 (the "Consulting Agreement"), which made Keller Chairman of Steep Hill's Board of Directors in addition to President and CEO.[5] Section 1.17 of the Consulting Agreement enumerates certain services that Keller would perform as a Steep Hill officer and director, including overseeing operations; encouraging "employees and contractors to conduct their activities in accordance with all applicable laws"; assessing principle risks and ensuring those risks are

---

[4] Arb. Award at 3 ("Keller personally invested in Steep Hill, as did Delft Blue, a Dutch company that is wholly owned and controlled by Renaissance Abstractions B.V., Keller's personal holding company."); D.I. 16 at 3 n.4 [hereinafter "POB"]; ("Delft Blue is a Dutch company wholly owned and controlled by Keller's personal holding company.").  A filing with the Netherlands Chamber of Commerce, which is attached as an exhibit to this decision, lists Keller as Renaissance Abstraction's "Sole Stockholder."  The Court takes judicial notice of Keller's ownership of Renaissance Abstraction as reflected in this filing. Del. R. Evid. R. 201(b)(2); *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 171 (Del. 2006) (affirming decision to take judicial notice of statement in Form 10-Q that "a majority of both classes of GM stockholders voted to approve the [challenged] transactions"); *City Pension Fund for Firefighters & Police Officers in City of Miami v. The Trade Desk, Inc.*, 2022 WL 3009959, at *17 n.147 (Del. Ch. July 29, 2022) (taking judicial notice of the contents of certain Form 4s filed with the SEC); *Parseghian ex rel. Gregory J. Parseghian Revocable Tr. v. Frequency Therapeutics, Inc.*, 2022 WL 2208899, at *4 (Del. Ch. June 21, 2022) (taking judicial notice of Form 4 filed with SEC to determine stock holdings); Art. 2:180 para. 1 BW (Neth.), available at Dutch Civil Law, *Dutch Civil Code Book 2 Legal Persons*, http://www.dutchcivillaw.com/legislation/dcctitle2255aa.htm (last visited Aug. 31, 2023) (requiring directors of besloten vennootschaps, or BVs, to register with the commercial register and file incorporation documents).

[5] DOB, Ex. 2 [hereinafter "Consulting Agr."].  The parties agree that Keller, not Delft Blue, served as the Company's Chairman and CEO.  POB at 3 ("Keller was Steep Hill's chief executive officer ('CEO') from December 2, 2015 until August 21, 2018"); DOB at 3 (stating that Keller "was the Company's CEO and Chairman of the Board from 2015 to August/September 2018").  For purposes of clarity, I treat the agreement as the arbitrator and parties have, as though it expressly designates Keller as Chairman and CEO.

4

monitored; and ensuring "that the Company has appropriate systems to enable it to conduct is activities both lawfully and ethically."[6] It also includes a mandatory arbitration provision.[7] Though Keller signed the agreement as Delft Blue's Managing Director, he is not a signatory in his personal capacity.[8]

As a Steep Hill director and officer, three sources provided Keller a right to mandatory indemnification in connection with covered proceedings.[9] First, Steep Hill's Amended and Restated Bylaws (the "Bylaws") provide directors and "executive officers"[10] a right to mandatory indemnification "to the fullest extent not prohibited by the [Delaware General Corporation Law]."[11] Second, an indemnification agreement between Steep Hill and Keller (the "Indemnification Agreement") grants Keller a right to mandatory indemnification "[t]o the fullest

---

[6] Consulting Agr. §§ 1.17 (e), (f), (i), (l).

[7] *Id.* § 23.4.

[8] *Id.* at 13.

[9] Keller initially also sought indemnification under Steep Hill's certificate of incorporation. D.I. 1 ¶¶ 2, 22, 38 [hereinafter "Compl."]. Neither party provided the Court with a copy of the charter, and Keller later conceded that the charter does not provide mandatory indemnification rights. D.I. 33 at 2 n.3.

[10] Keller is an executive officer as defined by the Bylaws. *See* D.I. 17 [hereinafter "Juray Aff."], Ex. I § 44(a) [hereinafter "Bylaws"] (defining "executive officer" by reference to 17 C.F.R. § 240.3b–7); 17 C.F.R. § 240.3b–7 (2023) ("The term executive officer, when used with reference to a registrant, means its president, any vice president of the registrant in charge of a principal business unit, division or function (such as sales, administration or finance), any other officer who performs a policy making function or any other person who performs similar policy making functions for the registrant.").

[11] Bylaws § 44(a).

5

extent permitted by appliable law."[12] The Indemnification Agreement requires, as a condition precedent to being indemnified, that Keller provide notice to Steep Hill within seven days of receiving a complaint or notice of a proceeding that may trigger his indemnification rights.[13] And third, 8 *Del. C.* § 145(c) provides for mandatory indemnification rights where "a present or former director or officer of a corporation has been successful on the merits or otherwise in defense of any" covered proceeding.[14] All three sources provide that the right to indemnification is not exclusive of any other indemnification rights.[15]

Keller's troubles with the Company began in earnest when California legalized recreational cannabis on January 1, 2018.[16] In 2017, Steep Hill had suffered "considerable losses," but Keller and his management team were optimistic, predicting that recreational marijuana sales would be a boon to the business and updating their projections accordingly.[17] But with freedom came responsibility: in connection with legalization, California implemented emergency regulations through the California Bureau of Cannabis Control ("BCC") requiring, among other

---

[12] DOB, Ex. 4 § 1.3 [hereinafter "Indem. Agr."]; *id.* § 1.2.

[13] *Id.* § 3.2.

[14] 8 *Del. C.* § 145(c)(1).

[15] Bylaws § 44(e); Indem. Agr. § 4.2; 8 *Del. C.* § 145(f).

[16] Arb. Award at 4.

[17] *Id.* at 7.

things, testing cannabis sold in the state for pesticides.[18] In June of 2018, the BCC released "Readopted Emergency Regulations" that revised the earlier regulations.[19]

These regulatory changes caused confusion, and Steep Hill struggled to comply under Keller's leadership.[20] Over the ensuing months, Keller made or was privy to a series of compliance decisions that may have contributed to the BCC deciding to intervene and temporarily shut down Steep Hill's labs.[21] Meanwhile, the high times Keller anticipated never arrived: the Company was not meeting its own projections and by spring of 2018 Steep Hill "was in a cash crunch."[22] Steep Hill's Board of Directors removed Keller as CEO on August 21, 2018, and he was removed as Chairman on September 25.[23]

## A. The Arbitration

Steep Hill wanted more from Keller. It served a demand for arbitration against Keller and Delft Blue on January 18, 2019 (the "First Arbitration Demand").[24] Steep Hill sought "a declaration that neither Delft Blue or Keller are entitled to advancement or indemnification from the Company" and "an award of monetary

---

[18] *Id.* at 4–5.

[19] *Id.* at 5.

[20] *Id.* at 6–18.

[21] *Id.*

[22] *Id.* at 7.

[23] *Id.* at 12.

[24] DOB, Ex. 5.

damages," including "rescission of compensation and equity awards paid to Keller."[25]  The First Arbitration Demand alleged that Keller mismanaged Steep Hill by, among other things, (1) giving three of his children "highly compensated top-tier positions at the company" despite their lack of qualifications; (2) putting his "close friend and business partner . . . on the company payroll, giving him the title of Director of Human Resources" despite his lack of qualifications; (3) being "either complicit in or responsible for the potential misreporting of test results to both customers and to the BCC"; and (4) "foster[ing] a culture of fear and retaliation in the lab, such that employees who reported laboratory issues were silenced."[26]  The First Arbitration Demand also brought claims against Delft Blue for breach of contract.[27]  The demand did not elaborate on these claims against Delft Blue and did not identify any separate conduct on which they were based.  Steep Hill filed an amended arbitration statement a few months later (the "Amended Arbitration Statement"), which added more allegations along the same lines.[28]

Keller refused to join the arbitration, contending he was not a signatory to the Consulting Agreement.[29]  On August 4, Steep Hill filed a motion to compel Keller

---

[25] DOB, Ex. 5 at Attach. A at 4.

[26] *Id.* at 2–4.

[27] *Id.* at 4.

[28] DOB, Ex. 7.

[29] *See* Juray Aff., Ex. E.

to arbitrate.[30]  Steep Hill attempted to bind Keller to the arbitration provision as a third party beneficiary, as Delft Blue's agent, and as an alter ego of Delft Blue, as well as under a theory of estoppel.[31]  It also argued that Keller could be compelled to arbitrate because "Steep Hill's breach of fiduciary duty claims against Keller are founded in and intertwined with the Consulting Agreement," and "the claims against him are inextricably intertwined with those against Delft Blue."[32]  As support for this argument, Steep Hill explained that "Keller is an officer, agent, owner and alter ego of Delft Blue, and he personally acted on behalf of Delft Blue in the execution and performance of the Consulting Agreement," and that "Keller, based on his role as the Company's consultant, Chairman of the Board and CEO (via the Consulting Agreement), directed Delft Blue's breaches of the Consulting Agreement."[33]  The arbitrator compelled Keller to arbitrate as a third-party beneficiary to the Consulting Agreement.[34]  The arbitrator also reasoned that Keller was the "Consultant" under the agreement, because "there are several references to Consultant in the Agreement

---

[30] Juray Aff., Ex. D.

[31] *Id.* at 3–16.

[32] *Id*. at 16.

[33] *Id*.

[34] Juray Aff., Ex. E, at 4.

9

that emphasize the *personal* nature of the Consultant's obligations, none of which could possibly be obligations of a business entity."[35]

Meanwhile, Keller continued to attend Steep Hill stockholder meetings in his stockholder capacity.[36] Before a June 29, 2020 stockholder meeting, Keller received an email "with an attachment titled 'Shareholder Letter (June 2020)'" containing nonpublic details on a potential transaction between Steep Hill and a competitor.[37] On July 1, Keller, through his attorneys, issued a press release expressing that the transaction would be value-destructive for Steep Hill stockholders.[38] Shortly thereafter, "a large potential customer of Steep Hill's[] dropped out of a long-term exclusive partnership deal" it had with the Company.[39]

A few months later, Steep Hill filed a second amended arbitration demand (the "Second Amended Arbitration Demand").[40] The Second Amended Arbitration Demand largely recited the same factual allegations as the First Arbitration Demand and the Amended Arbitration Demand, and added claims asserting Keller breached the Consulting Agreement's non-disparagement and non-disclosure obligations by

---

[35] *Id.*

[36] *See* Arb. Award at 18.

[37] *Id.*

[38] *Id.* at 18–19.

[39] *Id.* at 19.

[40] DOB, Ex. 8.

issuing the press release, as well as a claim for tortious interference based on the Steep Hill customer terminating its relationship and other potential customers and partners declining to do business with the Company.[41] As with the first two arbitration demands, the claims against Keller were the meat and potatoes of the Second Amended Arbitration Demand.

After receiving the Second Amended Arbitration Demand, Keller and Delft Blue filed an answering statement asserting affirmative defenses and counterclaims for breach of the Consulting Agreement for failure to make payments under that agreement, breach of the covenant of good faith and fair dealing, and defamation based on statements "to the effect that Keller engaged in malfeasance during his tenure as Steep Hill's CEO."[42] Keller also requested Steep Hill advance his fees and expenses relating to the arbitration.[43] In response, Steep Hill sent him a letter stating its intent to withdraw certain claims in an overt effort to avoid any advancement obligations:

---

[41] *Id.*

[42] DOB, Ex. 12 ¶¶ 123–147.

[43] DOB, Ex. 9.

11

> While Steep Hill believes each of its claims are meritorious and likely to succeed, Steep Hill would prefer not to divert financial resources litigating over Mr. Keller's advancement rights. Steep Hill is similarly confident that Mr. Keller would be ordered to repay any such advanced costs at the conclusion of litigation; however, the Company doubts Mr. Keller's ability to repay any amounts advanced. Therefore, after careful consideration, Steep Hill is electing to withdraw its claims related to Mr. Keller's performance as an officer.[44]

The letter clarified the claims Steep Hill intended to pursue against Delft Blue: "1) breach of contract; 2) tortious interference with contract and business relations; 3) breach of confidence; 4) conversion; 5) recission of compensation; and" 6) a claim relating to Delft Blue's conversion of a convertible note.[45] Steep Hill also maintained its claims against Keller relating to the press release.

But Steep Hill did not actually stop pursuing its claims based on Keller's conduct as a director and officer—it continued to advance such claims, just against Delft Blue. As framed by the arbitrator in his December 3, 2021 decision, Steep Hill's breach of contract claims pressed that "Keller's actions caused Delft Blue to breach . . . the 2018 Consulting Agreement because" Keller:

---

[44] DOB, Ex. 10, at 1.

[45] *Id.* at 2 n.1.

[1] Failed to pause regulatory testing to bring its pesticide testing methodologies into compliance with the BCC and instead decided to report instrument rather than method [limit of detections/limit of quantifications], against the recommendation of Steep Hill's entire scientific team, to conceal Steep Hill's inability to test to the sensitivity levels required by the regulations; and

[2] Changed the pass/fail limit for Category 1 pesticides to make it easier for Steep Hill's customer samples to receive passing results, violating the BCC regulations, causing at least one customer to receive a fraudulent "pass."[46]

The arbitrator's analysis of those claims focused on actions Keller took in his capacity as a Steep Hill fiduciary.[47] The arbitrator found in Delft Blue's favor on the breach of contract claims, and in Keller's favor on the disparagement, non-disclosure, and tortious interference claims.[48] And he ruled against Keller and Delft Blue on all of their counterclaims.[49]

## B. This Action

Keller filed this action on January 28, 2022, seeking indemnification for his and Delft Blue's fees relating to the arbitration under the Indemnification Agreement, Bylaws, Section 145, and the Company's certificate of incorporation.[50]

---

[46] Arb. Award at 19 (formatting altered).

[47] *Id.* at 19–23.

[48] *Id.* at 19–26.

[49] *Id.* at 26–28.

[50] Compl.

The parties cross-moved for summary judgment on October 26,[51] and proceeded to brief both motions.[52]

On December 6, I requested supplemental briefing because the briefing on the cross motions "focused on the [I]ndemnification [A]greement, but did not meaningfully brief the [Bylaws], and did not brief defendant Steep Hill, Inc.'s charter at all, or provide it to the Court."[53] I also asked "the parties to brief the significance of Section 145(c)'s provision of mandatory indemnification, particularly in view of the language in Steep Hill's [Bylaws] and the [I]ndemnification [A]greement invoking the scope of indemnification offered by the [Delaware General Corporation Law]."[54] Keller responded by contending the Court could forgo a separate analysis under the Indemnification Agreement and Bylaws, and could instead proceed under only Section 145.[55] Keller also clarified that he no longer is seeking indemnification under Steep Hill's charter.[56] In its response, Steep Hill maintained that the Court should conclude that the Indemnification Agreement's

---

[51] D.I. 14 at Mot. for Summ. J.; D.I. 15.

[52] POB; DOB; D.I. 23; D.I. 24.

[53] D.I. 30 at 1 (footnote omitted).

[54] *Id.* at 1–2.

[55] D.I. 33 at 3–4.

[56] *Id.* at 2 n.3.

notice requirement should be read into Section 145.[57] The Court heard argument on May 17, 2023.[58]

## II.    ANALYSIS

This Court will grant a motion for summary judgment where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[59] In deciding a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party, and the moving party has the burden of demonstrating that no material question of fact exists.[60] Where "the parties have filed cross motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[61] "A ruling on indemnification is . . . appropriate at the summary judgment stage where there are no material factual disputes germane to indemnification and the moving party is entitled to judgment as a matter of law."[62]

---

[57] D.I. 36 at Br. 19–22.

[58] D.I. 41; D.I. 42.

[59] Ct. Ch. R. 56(c).

[60] *Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *3 (Del. Ch. Feb. 13, 2018).

[61] Ct. Ch. R. 56(h).

[62] *Xu Hong Bin v. Heckmann Corp.*, 2010 WL 187018, at *1 (Del. Ch. Jan. 8, 2010).

Although Keller requests indemnification from three sources, I proceed under only Section 145 because it provides for rights broader than the Indemnification Agreement and rights co-extensive with the Bylaws. Section 145(c) reads as follows:

> To the extent that a present or former director or officer of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith.[63]

Mandatory indemnification under Section 145(c) requires "(1) that the matter at issue was covered by § 145(a) or (b); and (2) that the party was successful on the merits or otherwise."[64] To be covered by Section 145(a) or (b), "the covered individual must have been made a party to the underlying proceeding 'by reason of the fact that [she] is or was' an officer or director."[65]

Keller seeks indemnification for all fees incurred in both his and Delft Blue's arbitration defense, and in prosecuting the counterclaims he and Delft Blue brought in the arbitration. Steep Hill argues that it withdrew the claims against Keller for

---

[63] 8 *Del. C.* § 145(c)(1).

[64] *Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at *3 (Del. Ch. May 3, 2002) (internal quotation marks omitted) (quoting *Cochran v. Stifel Fin. Corp.*, 2000 WL 1847676, at *9 (Del. Ch. Dec. 13, 2000), *aff'd in part, rev'd in part*, 809 A.2d 555 (Del. 2002)).

[65] *Evans v. Avande, Inc.*, 2022 WL 2092126, at *3 (Del. Ch. June 9, 2022) (alteration in original) (quoting 8 *Del. C.* § 145(b)).

16

which he could be indemnified, and that he has no right to recover for the defense of the breach of contract claims against Delft Blue because it is a distinct legal entity. It also argues that Keller is not entitled to indemnification for any claims because the arbitrator's findings are, in its view, inconsistent with the conclusion that Keller acted in good faith. Finally, it argues that Keller's failure to provide notice under the Indemnification Agreement precludes him from recovering under Section 145.

I first evaluate whether Keller is entitled to indemnification for the claims against Keller that Steep Hill withdrew. Finding little dispute concerning Section 145(c)'s requirements, and concluding that Steep Hill's bad faith defense is irrelevant under Section 145(c) and that reading the notice requirement into Section 145 is not supported by our law, I hold that Keller is entitled to indemnification for the withdrawn claims.

I then turn to whether Keller may recover for Delft Blue's defense of the breach of contract claims. Steep Hill pursued the breach of contract claims against Delft Blue for actions Keller took as a director and officer, and it appears Steep Hill was attempting to recover from Keller for those claims through an alter ego theory. Under Section 145's plain language and policies, as applied in Delaware precedent, a director or officer may recover for fees incurred by a wholly owned entity in such circumstances so long as Section 145's other requirements are met. I conclude Keller is entitled to indemnification for the breach of contract claims. Keller is also

17

entitled to indemnification for the counterclaims brought by he and Delft Blue because those claims were part of his arbitration defense.

Finally, Keller is not entitled to indemnification for his defense of the claims arising from the press release because they were not brought against him in his capacity as a director or officer. Though Keller is entitled to fees on fees, that award must be reduced to account for his lack of success on the press release claims.

### A.  The Withdrawn Claims

When Steep Hill initiated the arbitration, it asserted claims against Keller for his misconduct as a director or officer. When Keller demanded advancement, Steep Hill responded by claiming to withdraw claims against him (the "Withdrawn Claims") for:

> (1) breach of fiduciary duty (including acts of corporate waste and mismanagement); (2) breaches of the Delft Blue Consulting Agreement resulting from Mr. Keller's misconduct in his capacity as an officer or director of Steep Hill and/or involving information Mr. Keller obtained as an officer or director of Steep Hill; (3) conversion; (4) recission of Mr. Keller's compensation; and (5) declaratory relief that Mr. Keller is not entitled to indemnification or advancement.[66]

The parties do not dispute that the arbitration was a covered proceeding under Section 145(a) and (b). And Steep Hill admits the claims it brought against Keller through the First Arbitration Statement concerned "*his misconduct as CEO and*

---

[66] DOB, Ex. 10, at 1–2.

*Board Chairman*," such that there is no dispute Steep Hill sued him in his capacity as an officer and director.[67] Nor is there any dispute that Keller was "successful on the merits or otherwise": Steep Hill voluntarily dismissed all the Withdrawn Claims.[68]

Rather, Steep Hill argues Keller cannot be indemnified for these claims because the arbitrator's "factual findings are not compatible with a determination that Keller acted in good faith and in the best interests of the Company."[69] But whether Keller acted in good faith is irrelevant to whether he is entitled to indemnification under Section 145(c).[70] And the arbitrator did not find Keller acted

---

[67] DOB at 7 (emphasis in original). Steep Hill's later claims for misuse of confidential information and tortious interference will be addressed separately.

[68] DOB, Ex. 10.

[69] D.I. 23 at 11.

[70] *See Hermelin v. K-V Pharm. Co.*, 54 A.3d 1093, 1114 (Del. Ch. 2012) ("Unlike Section 145(c), Section 145(a) requires a finding that the indemnitee did not act in bad faith, a fact-intensive inquiry that will most likely require a trial and credibility determinations."); 1 Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 9.02[b][2], at 9-21 (2d ed. 2022) [hereinafter "Wolfe & Pittenger"] ("The question whether the individual seeking indemnification acted in good faith or in what he or she perceived to be the best interest of the corporation has no relevance to mandatory indemnification under Section 145(c)(1) because Section 145(c)(1) does not incorporate the good faith standards of Sections 145(a) and (b)."); *see also Perconti*, 2002 WL 982419, at *3 ("If the former officer is 'successful on the merits or otherwise' in a proceeding described in Section 145(a), then he is entitled to indemnification regardless of whether or not he acted in good faith or in what he perceived to be the best interests of the corporation.").

19

in bad faith, nor are his findings inconsistent with a decision that Keller acted in good faith. Steep Hill's bad faith argument fails.

Steep Hill also seeks to preclude Keller from obtaining indemnification under Section 145(c) based on his failure to comply with Section 3.2 of the Indemnification Agreement. That section provides:

> [Keller] shall, as a condition precedent to his . . . right to be indemnified under this Agreement, give the Company notice in writing as soon as practicable of any claim made against [Keller] for which indemnification will or could be sought under this Agreement, but in no event later than seven (7) days after [Keller's] receipt of a summons, legal complaint or written notice of any such action, suit or proceeding. Notice to the Company shall be directed to the Chief Executive Officer of the Company and shall be given in accordance with the provisions of Section 12 below. In addition, [Keller] shall give the Company such information and cooperation as it may reasonably require and as shall be within [Keller's] power.[71]

Keller does not contest that he failed to comply with the strict letter of this provision. He did not have to under Section 145(c): this limitation appears in only the Indemnification Agreement, and is not present in Section 145(c). Each indemnification source raised in this action includes language stating that the indemnification rights granted are not exclusive of any other source.[72] And Delaware law provides that each source of indemnification is to be read disjunctively

---

[71] Indem. Agr. § 3.2.

[72] Bylaws § 44(e); Indem. Agr. § 4.2; 8 *Del. C.* § 145(f).

20

where such language is present.[73]    Thus, a condition precedent in one indemnification source is not incorporated into a different indemnification source.[74]

Keller is entitled to indemnification in connection with the Withdrawn Claims.[75]

## B.    The Breach Of Contract Claims Against Delft Blue

Keller is likewise entitled to indemnification for all fees Delft Blue incurred in defending against Steep Hill's breach of contract claims.  He contends that Steep

---

[73] *Narayanan v. Sutherland Glob. Hldgs. Inc.,* 2016 WL 3682617, at *8–11 (Del. Ch. July 5, 2016); *see also White v. Curo Tex. Hldgs., LLC*, 2016 WL 6091692, at *22–23 (Del. Ch. Sept. 9, 2016).

[74] *Narayanan,* 2016 WL 3682617, at *8–11.

[75] Steep Hill appears to have raised four other defenses.  First, it states, without any citation or explanation, that Keller "must defeat the consequences of his own unclean hands."  DOB at 15.  This apparent unclean hands defense is so underdeveloped that the Court need not address it.  *First Solar, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 274 A.3d 1006, 1018 (Del. 2022) ("This argument was not sufficiently briefed and is waived.").  Second, it asks, again without citation, that the Court "use its equitable powers to deny Keller's claim to indemnification" because it believes that Keller "file[d] a materially false pleading against Steep Hill and numerous other parties in" an earlier filed action in this Court, which has since been withdrawn. DOB at 27.  Even if Steep Hill had demonstrated the statements in the referenced pleading were false, it has not come close to showing that Keller's mandatory indemnification rights should be denied on equitable grounds.  Third, Steep Hill requested that any indemnification be offset by a "$35,796.60 judgement entered in Steep Hill favor against Keller in the Superior Court of California, San Francisco County, which remains unpaid." *Id.* at 28.  Steep Hill does not have a contractual right to offset, nor has it identified a legal basis to offset, a judgment enforcing a statutory right.  Its request is denied.  Fourth and finally, Steep Hill argues that principles of equitable estoppel should bar Keller from receiving indemnification because he failed to notify Steep Hill that the arbitration may trigger his indemnification rights as required by the Indemnification Agreement, and because he did not inform Steep Hill that he did not believe the purported withdrawal of certain claims mooted his indemnification rights.  Even assuming the other elements of equitable estoppel are met, Steep Hill has not demonstrated that it "suffered a prejudicial change of position as a result of such reliance" as it must to prove its estoppel defense. *In re Cent. Banking Sys., Inc.*, 1993 WL 410421, at *5 (Del. Ch. Oct. 6, 1993).

21

Hill merely reframed the fiduciary claims against him as breach of contract claims against Delft Blue to avoid its indemnification obligations, and that the proceedings still required him to defend actions he took as a director and officer. Similarly, he argues that Steep Hill sought to recover from him through a theory of alter ego such that he was required to defend himself for actions he took as a director or officer. Steep Hill retorts that because Delft Blue is a legally distinct entity, Keller cannot recover for fees it incurred.

As with the Withdrawn Claims, there is no serious dispute that Delft Blue was successful on the merits or that these fees were incurred in connection with a covered proceeding. The parties agree that Keller was a Steep Hill director and officer, such that the request has been made by a covered person. The breach of contract claims were based entirely on Keller's acts or omissions as a Steep Hill director or officer, and therefore were brought by reason of the fact he was a director or officer. This opinion concludes that because Keller wholly owns Delft Blue, he actually incurred the fees at issue for purposes of Section 145.

> **1. The Breach Of Contract Claims Were Brought By Reason Of The Fact Keller Was A Steep Hill Director Or Officer.**

Section 145(c) requires that the expenses at issue be incurred "by reason of the fact that the [indemnitee] is or was a director, officer, employee or agent of the

22

corporation."[76]  "[I]f there is a nexus or causal connection between any of the underlying proceedings contemplated by [Section 145] and one's official corporate capacity, those proceedings are 'by reason of the fact' that one was a corporate officer, without regard to one's motivation for engaging in that conduct."[77]  "That link is shown 'if the corporate powers were used or necessary for the commission of the alleged misconduct.'"[78]

"Delaware law recognizes the potential for parties to eliminate their advancement obligations by amending their claims."[79]  But such efforts can prompt the Court's "skepticism," and the Court "ought be wary of artful attempts at pleading around such a right."[80]  Indeed, the Court has acknowledged that it would be "inequitable" to allow a company to escape its obligations through "mere

---

[76] 8 *Del. C.* § 145(a).

[77] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 214 (Del. 2005).

[78] *Evans*, 2022 WL 2092126, at *4 (quoting *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007)).

[79] *Carr v. Glob. Payments Inc.*, 2019 WL 6726214, at *4 (Del. Ch. Dec. 11, 2019) (citing *Mooney v. Echo Therapeutics, Inc.*, 2015 WL 3413272, at *6 (Del. Ch. May 28, 2015)), *aff'd*, 227 A.3d 555 (Del. 2020).

[80] *Id.*

relabeling."[81]  And so, our courts focus not on what label is ascribed to a claim, but rather the conduct underlying it.[82]

Following Keller's arbitration demand, Steep Hill withdrew the breach of fiduciary duty claims against Keller, and claimed to withdraw its claims for "breaches of the Delft Blue Consulting Agreement resulting from Mr. Keller's misconduct in his capacity as an officer or director of Steep Hill."[83]  Steep Hill recast its claims for the sole purpose of avoiding Keller's advancement rights.

The remaining claims against Delft Blue were brought by reason of the fact that Keller was a Steep Hill director and officer.  As Steep Hill put it in its motion to compel Keller to arbitrate, "it was Keller's misconduct as the Chairman of the Board, CEO, and President, that gives rise to Steep Hill's breach of contract claims."[84]  The arbitrator framed the breach of contract claims as asserting that Keller caused Delft Blue to breach the Consulting Agreement through decisions he

---

[81] *Brown v. LiveOps, Inc.*, 903 A.2d 324, 325, 329 (Del. Ch. 2006).

[82] *Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *6 (Del. Ch. June 18, 2002) ("[T]he negligence, gross negligence, common law fraud, and contract claims brought against Reddy all could be seen as fiduciary allegations, involving as they do the charge that a senior managerial employee failed to live up to his duties of loyalty and care to the corporation.  Most critically, all of the misconduct alleged by EDS involves actions Reddy took on the job in the course of performing his day-to-day managerial duties.  Likewise, the Criminal Action also involves conduct solely involving Reddy's actions in his official capacity; indeed, the indictment specifically alleges that Reddy's criminal acts were taken in a fiduciary capacity and that he defrauded EDS by depriving it of his honest services.").

[83] DOB, Ex. 10, at 1.

[84] Juray Aff., Ex. D, at 15.

made and actions he took in his capacity as a Steep Hill director or officer.[85] Specifically, he wrote Steep Hill pressed claims that Keller caused Delft Blue to breach the Consulting Agreement by "[f]ail[ing] to pause regulatory testing" and "[c]hang[ing] the pass/fail limit" for certain pesticides.[86] These matters concerned Keller's role as a director and officer, as the arbitrator found that "[v]irtually all the senior people at Steep Hill reported directly to Keller as CEO, and ultimately everyone working for the company reported up to Keller as CEO and Chairman," and that "Keller approved substantive decisions at Steep Hill; was often involved in testing operations; and was frequently updated on Steep Hill's regulatory problems."[87]

Steep Hill's breach of contract claims against Delft Blue are premised on Keller's exercise of his authority as a director or officer. They were brought by reason of the fact of Keller's actions as a Steep Hill director and officer.

### 2. Whether Keller Actually Incurred Delft Blue's Expenses

I next address whether Keller "actually and reasonably incurred" fees relating to Delft Blue's defense. To be indemnified under Section 145(c), the expenses at issue must be "actually and reasonably incurred by [the indemnitee] in connection"

---

[85] Arb. Award at 19.

[86] *Id.*

[87] *Id.* at 3 (citations omitted).

with the proceeding.[88]  The issue is whether Keller actually incurred the fees charged

to Delft Blue within the meaning of Section 145.

Delaware courts have interpreted Section 145 to serve the statute's dual policy goals:  first, "allowing corporate officials to resist unjustified lawsuits, secure in the knowledge that, if vindicated, the corporation will bear the expense of litigation" and second, "encouraging capable women and men to serve as corporate directors and officers, secure in the knowledge that the corporation will absorb the costs of defending their honesty and integrity."[89]  Our courts "eschew narrow construction of the statute where an overliteral reading would disserve these policies."[90]  In other words, "Section 145 must be applied in light of the broad, salutary policy goal of assuring corporate officers and directors that their corporation will absorb the risks that may result from performance of their duties and, accordingly, Delaware's indemnification statute has been interpreted expansively."[91]

---

[88] 8 *Del. C.* § 145(c)(1); *O'Brien v. IAC/Interactive Corp.*, 2010 WL 3385798, at *5 (Del. Ch. Aug. 27, 2010) (stating that Delaware courts ask three questions when determining whether fees are reasonable: "were the expenses actually paid or incurred; were the services that were rendered thought prudent and appropriate in the good faith professional judgment of competent counsel; and were charges for those services made at rates, or on a basis, charged to others for the same or comparable services under comparable circumstances" (internal quotation marks omitted) (quoting *Delphi Easter P'rs Ltd. P'ship v. Spectacular P'rs, Inc.*, 1993 WL 328079, at *9 (Del. Ch. Aug. 6, 1993))), *aff'd sub nom. IAC/InterActiveCorp v. O'Brien*, 26 A.3d 174 (Del. 2011).

[89] *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 84 (Del. 1998).

[90] *Id.*

[91] *Perconti*, 2002 WL 982419, at *3.

26

In *Zaman v. Amedeo Holdings*, then-Vice Chancellor Strine held that a person covered by a contractual mandatory advancement provision was entitled to advancement for fees nominally incurred by her wholly owned entities.[92] There, two plaintiffs sought advancement and indemnification in connection with multiple underlying proceedings.[93] In one of those proceedings filed in New York, the advancement defendants alleged that one of the advancement plaintiffs caused "entities that were controlled by her . . . to enter sweetheart subleases with the owner of the New York Palace Hotel."[94] The advancement plaintiff's entities in the New York action filed counterclaims "alleging that the leases were proper and enforceable."[95] The Court reasoned that although allowing the plaintiff to recover for the wholly-owned entities' expenses may be "somewhat unusual, . . . the reality of wholly-owned entities is that if the counterclaim expenses were not advanced, the [advancement plaintiffs] would pay the costs of the counterclaims being asserted by the entities in a way that would substantively defeat their advancement rights."[96]

---

[92] *Zaman v. Amedeo Hldgs., Inc.*, 2008 WL 2168397, at *37 (Del. Ch. May 23, 2008).

[93] *Id.* at *13.

[94] *Id.* at *37.

[95] *Id.*

[96] *Id.*

The Court held that the plaintiffs were entitled to advancement for those counterclaims.[97]

So too here. Delft Blue is wholly owned by Renaissance Abstractions B.V., which is wholly owned by Keller. Because Keller is the sole stockholder of the entity that wholly owns Delft Blue, the reality is that he bore its litigation costs, regardless of whether the alter ego theory succeeded.[98] Keller would therefore indirectly incur any fees incurred by Delft Blue.

Applying Section 145 to conclude that these indirectly incurred fees were "actually . . . incurred" by Keller serves the statute's underlying policies of encouraging corporate service and allowing directors and officers to resist unjustified lawsuits. Steep Hill restyled breach of fiduciary duty claims against Keller as breach of contract claims against Delft Blue solely to circumvent his advancement rights—a tactic Delaware law treats with skepticism. And it appears Steep Hill would have attempted to collect any judgment against Delft Blue from Keller. In its motion to compel Keller to arbitrate, Steep Hill described Delft Blue as "a shell company" that was "own[ed] and controlled" by Keller.[99] Indeed, Steep

---

[97] *Id.*

[98] *Id.* ("Moreover, the reality of wholly-owned entities is that if the counterclaim expenses were not advanced, the Derbyshires would pay the costs of the counterclaims being asserted by the entities in a way that would substantively defeat their advancement rights.").

[99] Juray Aff., Ex. D, at 15.

Hill's motion to compel can be read as suggesting that it believed Delft Blue had no assets and that Keller had to be a party to the arbitration in order for it to collect on any judgment.[100] Steep Hill targeted Delft Blue as a scapegoat to avoid Keller's advancement and indemnification rights, and as a conduit to recover for Keller's alleged mismanagement.

I decline to read Section 145 narrowly, based on and in furtherance of artful litigation, in a manner that would nullify Keller's mandatory indemnification rights. Delaware law recommends against such an interpretation.[101] As this Court recognized in *Zaman*, requiring Keller to bear Delft Blue's expenses would "substantively defeat" his indemnification rights.[102] I conclude Delft Blue's fees incurred in defending against the arbitration were incurred by Keller for purposes of Section 145(c).

---

[100] *See id.* ("It would be unequitable [sic] to allow Keller to use Delft Blue as a shell company through which he obtained benefits from and performed services to Steep Hill, and avoid being bound by the terms of the Consulting Agreement . . . .").

[101] *See VonFeldt*, 714 A.2d at 84 ("We eschew narrow construction of [Section 145] where an overliteral reading would disserve [the underlying] policies."); *see also Carr*, 2019 WL 6726214, at *4 (explaining that the Court should "be wary of artful attempts at pleading around" advancement rights); *cf. Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002) (holding that litigants who prevail under section 145 are entitled to fees on fees because otherwise "indemnification would be incomplete" and "[t]here is no compelling reason to deprive claimants of full indemnification, in accordance with the policy of § 145").

[102] *Zaman*, 2008 WL 2168397, at *37. Steep Hill also argues that Keller should be estopped from recovering Delft Blue's fees because he took the position that he was not Delft Blue's alter ego during the arbitration. Nothing in Keller's request for indemnification is contrary to his position that he is not an alter ego of Delft Blue. This defense fails.

29

## C. The Counterclaims

Keller is also entitled to indemnification for counterclaims he and Delft Blue brought in the arbitration. "Delaware courts have held that if a corporation brings indemnifiable claims against an individual, then the individual also will be indemnified for any counterclaims that are 'necessarily part of the same dispute and were advanced to defeat, or offset' the corporation's claims.'"[103] Counterclaims are "necessarily part of the same dispute" if they are compulsory.[104] A defendant may be indemnified for counterclaims even if she does not prevail on those claims.[105]

In the arbitration, Delft Blue brought counterclaims for breach of the Consulting Agreement for failure to pay sums due and for breach of the implied covenant of good faith and fair dealing.[106] Keller brought one counterclaim for defamation.[107] Steep Hill does not dispute that these counterclaims were

---

[103] *Dore v. Sweports, Ltd.*, 2017 WL 415469, at *21 (Del. Ch. Jan. 31, 2017) (quoting *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992)).

[104] *See Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992).

[105] *Id.* at 821, 824; *see also* 1 Wolfe & Pittenger § 9.02[b][2] at 9-20 ("Similarly, indemnification is mandatory even with respect to fees and expenses incurred in pursing [sic] unsuccessful defenses, so long as they were defenses asserted in an ultimately successful case.").

[106] DOB, Ex. 12 ¶¶ 123–33. The basis for the implied covenant claim is not entirely clear from the answering statement. The arbitrator later found that Delft Blue "did not put forth evidence or submit argument on their breach of the implied contract of good faith and fair dealing claim" and that the claim "appear[ed] to have been abandoned." Arb. Award at 26 n.11.

[107] DOB, Ex. 12 ¶¶ 134–47.

30

compulsory.[108]  That the claims were unsuccessful is irrelevant.[109]  These counterclaims are subject to indemnification.[110]

### D.  Claims Relating To The Press Release

Keller is not entitled to indemnification for his defense of the claims relating to the July 2020 press release.  Under Section 145(c), a covered person is entitled to indemnification only if they are sued by reason of the fact that they are a director or officer.[111]  As stated, this requirement is met if there is a "a nexus or causal connection between any of the underlying proceedings . . . and one's official corporate capacity."[112]

In the arbitration, Steep Hill alleged that Keller violated non-disclosure and non-disparagement clauses in the Consulting Agreement by disseminating

---

[108] Instead, Steep Hill dismissed this inquiry as "a red herring."  D.I. 36 at 11.

[109] *See Roven*, 603 A.2d at 824 (holding the plaintiff was entitled to advancement for a counterclaim that was dismissed as not relevant to the subject matter of the underlying action).

[110] *Id.*; *Zaman*, 2008 WL 2168397, at *37; *see also Duthie v. CorSolutions Med., Inc.*, 2008 WL 4173850, at *1 (Del. Ch. Sept. 10, 2008) ("This affirmative action arises as an outgrowth of Matria's litigation strategy and is a 'necessary part of the same dispute.'" (footnote omitted) (quoting *Roven*, 603 A.2d at 824)).

[111] 8 *Del. C.* § 145(c)(1) (providing for mandatory indemnification rights where one is successful in a proceeding covered by Section 145(a) or (b)); *id.* § 145(b) ("A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that the person is or was a director, officer, employee or agent of the corporation.").

[112] *Homestore*, 888 A.2d at 214.

confidential information.[113]  It also pursued a claim for tortious interference after a Steep Hill customer withdrew from "a long-term partnership" following the press release.[114]  Keller was removed from his positions as an officer and director August and September of 2018, respectively.[115]  Keller obtained the relevant information in June of 2020, and caused his attorneys to issue the press release on July 1.[116]  Keller obtained the information in his capacity as a Steep Hill stockholder, not as a director or officer.[117]  It follows that the claims relating to the press release were not brought against Keller by reason of the fact he was a Steep Hill director or officer.[118]  Keller is not entitled to indemnification in connection with these claims.

---

[113] DOB, Ex. 8, at 14–15.

[114] *Id.*

[115] Arb. Award at 12.

[116] *Id.* at 18–19.

[117] *See id.* at 24 ("[W]hen Keller attended the Zoom call on June 29, 2020, he was not acting as a consultant to Steep Hill pursuant to the 2018 Consulting Agreement; he was attending the call as a Steep Hill shareholder.").

[118] *See Carr*, 2019 WL 6726214, at *6 ("If the claim as pled relies on the misuse of confidential information learned while an officer or director, it 'pertains to' the party's former position, and that party is entitled to advancement under the standard applicable here.  On the other hand, if the claim merely alleges post-employment breach of a non-compete agreement, and it does not allege that the party used confidential information previously learned to facilitate the breach, then the breach does not 'pertain to'—that is relate to a duty or attribute of—the party's position." (footnote omitted) (quoting *Ephrat v. MedCPU, Inc.*, 2019 WL 2613281, at *7 (Del. Ch. June 26, 2019)); *Charney v. Am. Apparel, Inc.*, 2015 WL 5313769, at *16 (Del. Ch. Sept. 11, 2015) ("Charney's status within the Company may have formed part of the narrative leading to the execution of the Standstill Agreement, but it did not create a causal nexus with the transaction itself, which was between the Company and Charney personally.").

### E. Keller Must Submit A Good Faith Estimate Of His Fees And Expenses Consistent With This Ruling.

Steep Hill does not challenge the reasonableness of the fees, but rather argues that Keller should be precluded from receiving indemnification because he did not submit estimates separating out fees incurred in the proceedings Steep Hill believed were not covered proceedings. Keller has taken the position that none of the proceedings at issue were outside the scope of his indemnification rights, and he was not seeking partial indemnification. Thus, Keller's failure to separate his fees from Delft Blue's does not preclude a ruling in his favor.[119] Keller shall submit a "'good faith estimate of expenses incurred' relating to the" claims I have found to be subject to indemnification.[120]

### F. Fees On Fees

Finally, I conclude that Keller is entitled to fees on fees. Generally, a party who prevails in seeking indemnification or advancement is entitled to fees on fees.[121]

---

[119] *Cf. May v. Bigmar, Inc.*, 838 A.2d 285, 289 (Del. Ch. 2003) ("In *a partial indemnification case*, the burden is on the plaintiff to submit 'a good faith estimate of expenses incurred' relating to the indemnifiable claim." (emphasis added) (citation omitted)), *aff'd*, 854 A.2d 1158 (Del. 2004).

[120] *May*, 838 A.2d at 289 (citation omitted).

[121] *Blankenship v. Alpha Appalachia Hldgs., Inc.*, 2015 WL 3408255, at *28 (Del. Ch. May 28, 2015) ("Under the Delaware Supreme Court's decision in *Stifel Financial Corp. v. Cochran* and its progeny, a person who successfully prosecutes a claim under 8 *Del. C.* § 145 is typically entitled to recover the reasonable expenses incurred in connection therewith unless the corporation precludes such recovery upfront in the governing document or contract providing for indemnification." (footnote omitted)).

But Keller's request for such fees must be reduced proportionately in accordance with his success in obtaining indemnification.[122]

## III. CONCLUSION

Keller is entitled to indemnification for the expenses and fees he and Delft Blue incurred in connection with (1) the Withdrawn Claims, (2) Steep Hill's breach of contract claims against Delft Blue, and (3) his and Delft Blue's counterclaims. Keller is not entitled to indemnification for his defense of the claims arising from the press release. Keller shall submit a good faith estimate of the fees incurred in connection with the proceedings, which should not include fees relating to his defense of the press release claims. He shall also submit a good faith estimate of the fees incurred in this indemnification action in connection with the covered claims, reduced to reflect his lack of success on the press release claims.

---

[122] *Zaman*, 2008 WL 2168397, at *39 ("[T]his court has held that plaintiffs who are only partially successful shall receive fees on fees reflecting the extent of their success, and has made clear that the determination of the level of success is a nonscientific inquiry that simply involves a reasoned consideration of the issues at stake in the case and an assessment of the plaintiffs' level of success.").

# EXHIBIT

# A



# Business Register extract

# Netherlands Chamber of Commerce

**CCI number** 64483851

The company / organisation does not want its address details to be used for unsolicited postal advertising or visits from sales representatives.

**Legal entity**

| | |
|---|---|
| RSIN | 855685347 |
| Legal form | Besloten Vennootschap (comparable with Private Limited Liability Company) |
| Name given in the articles | Renaissance Abstractions B.V. |
| Corporate seat | Delft |
| First entry in Business Register | 04-11-2015 |
| Date of deed of incorporation | 03-11-2015 |
| Issued capital | EUR 1,00 |
| Paid-up capital | EUR 0,00 |
| Filing of the annual accounts | The annual accounts for the financial year 2021 were filed on 27-10-2022. |

**Company**

| | |
|---|---|
| Trade name | Renaissance Abstractions B.V. |
| Company start date | 03-11-2015 (registration date: 04-11-2015) |
| Activities | SBI-code: 6420 - Financial holdings |
| | SBI-code: 64302 - Investment funds in real estate |
| Employees | 0 |

**Establishment**

| | |
|---|---|
| Establishment number | 000033304491 |
| Trade name | Renaissance Abstractions B.V. |
| Visiting address | Molslaan 208, 2611CZ Delft |
| Telephone number | +31155160420 |
| Date of incorporation | 03-11-2015 (registration date: 04-11-2015) |
| Activities | SBI-code: 6420 - Financial holdings |
| | SBI-code: 64302 - Investment funds in real estate |
| | For further information on activities, see Dutch extract. |
| Employees | 0 |

**Sole shareholder**

| | |
|---|---|
| Name | Keller, Jmichaele |
| Date of birth | 04-02-1958 |
| Sole shareholder since | 03-11-2015 (registration date: 04-11-2015) |

**WAARMERK**
KAMER VAN KOOPHANDEL®

This extract has been certified with a digital signature and is an official proof of registration in the Business Register. You can check the integrity of this document and validate the signature in Adobe at the top of your screen. The Chamber of Commerce recommends that this document be viewed in digital form so that its integrity is safeguarded and the signature remains verifiable.

2023-08-24 22:19:08



# Business Register extract
# Netherlands Chamber of Commerce

---

**CCI number** 64483851

---

**Page** 2 (of 2)

**Board member**

| | |
|---|---|
| Name | Keller, Jmichaele |
| Date of birth | 04-02-1958 |
| Date of entry into office | 03-11-2015 (registration date: 04-11-2015) |
| Title | algemeen bestuurder |
| Powers | Solely/independently authorised |

---

Extract was made on 24-08-2023 at 22.19 hours.



WAARMERK
KAMER VAN KOOPHANDEL®

This extract has been certified with a digital signature and is an official proof of registration in the Business Register. You can check the integrity of this document and validate the signature in Adobe at the top of your screen. The Chamber of Commerce recommends that this document be viewed in digital form so that its integrity is safeguarded and the signature remains verifiable.

2023-08-24 22:19:08