IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CYNTHIA BOATRIGHT, as | ) | |
| Representative of the Estate of | ) | |
| CAROLINE EKONG, AND JOHN | ) | |
| ETIM, KOKOMMA EKONG and | ) | |
| KAEINI EKONG, individually, | ) | |
| and all collectively as Assignees of | ) | Case No.: N20C-11-022 CEB |
| CHRISTOPHER FRICK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE FARM INSURANCE | ) | |
| COMPANY d/b/a STATE FARM | ) | |
| FIRE AND CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: August 10, 2023
Decided: November 28, 2023

## MEMORANDUM OPINION

*Upon Consideration of Plaintiffs' Motion to Compel*,
**DENIED**

Joel H. Fredricks, Esquire, Gary S. Nitsche, Esquire, Nitsche & Fredricks, LLC, Wilmington, Delaware. *Attorneys for Plaintiffs.*

Joseph J. Bellew, Esquire, Gordon Rees Scully Mansukhani, LLP, Wilmington, Delaware. *Attorney for Defendants*.

**BUTLER, RJ.**

# INTRODUCTION

This is an insurance coverage dispute between Plaintiffs Cynthia Boatright as representative of the Estate of Caroline Ekong, John Etim, Kokomma Ekong, and Kaeini Ekong, individually, and all collectively as Assignees of Christopher Frick (collectively, "Plaintiffs") and Defendant State Farm Insurance Company d/b/a State Farm and Casualty Company ("State Farm"). On November 3, 2020, Plaintiffs filed a Complaint against State Farm, asserting claims for breach of contract and breach of the covenant of good faith and fair dealing. The Plaintiffs contend that State Farm wrongfully denied Christopher Frick insurance coverage under his parents' homeowners' policy in an underlying wrongful death lawsuit.

On March 15, 2023, Plaintiffs moved to compel discovery from State Farm by filing a Motion to Compel Ownership Claim File (the "Motion"). The Motion seeks to compel State Farm to produce the claim file of James and Cynthia Frick (the "Fricks") in the underlying lawsuit. State Farm objected to this discovery request on the grounds that the Fricks' claim file is not relevant to this case.

Upon consideration of the parties' submissions, for the reasons stated herein, the Plaintiffs' Motion to Compel is **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

In October, 2015, Christopher Frick killed his former mental health therapist, Caroline Ekong, stabbing her to death in the foyer of her Hockessin home.[1] Mrs. Ekong's body was discovered by her daughter, Kokomma Ekong.[2]

After murdering Mrs. Ekong, Christopher returned home to his parents' house, also in Hockessin.[3] Once home, Christopher told his parents what he had done, and they called the police.[4] The police arrested Christopher and he was charged with multiple offenses. Prior to trial, Christopher pled "guilty, but mentally ill" to first-degree murder.[5] He was sentenced and is currently in prison.[6]

In September, 2017, in the aftermath of the murder, Cynthia Boatright as representative of the Estate of Caroline Ekong, John Etim, Kokomma Ekong, and Kaeini Ekong filed a wrongful death lawsuit against Christopher and his parents in this Court (the "Underlying Lawsuit").[7]

When the Underlying Lawsuit was filed, the Fricks and Christopher sought insurance coverage from State Farm under a homeowners' policy (the "Policy")

---

[1] Pl.'s Mot. to Compel Ownership Claim File Ex. 5 ¶ 4.
[2] *Id.*
[3] Pl.'s Mot. to Compel Ownership Claim File Ex. 7 at 5.
[4] *Id.*
[5] Pl.'s Mot. to Compel Ownership Claim File Ex. 5 ¶ 40.
[6] *Id.* at ¶ 2.
[7] Compl., Sept. 18, 2017; *see* Pl.'s Mot. to Compel Ownership Claim File Ex. 5.

issued to the Fricks.[8] State Farm agreed to provide the Fricks with a defense under the Policy pursuant to a reservation of rights.[9] But State Farm denied any coverage whatsoever to Christopher.[10]

On September 22, 2020, the parties stipulated to a dismissal of all claims against the Fricks in the Underlying Lawsuit.[11] Two days later, in the face of no opposition from Christopher, the Court entered summary judgement on behalf of Plaintiffs as to Christopher.[12] On October 23, 2020, the Plaintiffs and Christopher stipulated to an arbitration award of $15,816,580.00 in damages. Christopher then assigned his rights under the Policy to the Plaintiffs.

In November, 2020, Plaintiffs commenced this action against State Farm, alleging that State Farm wrongfully denied Christopher insurance coverage under the Policy ("Coverage Lawsuit").[13] The Coverage Lawsuit asserts that State Farm breached the Policy and acted tortiously in that it: a) failed to provide Christopher with a defense to the allegations in the Underlying Lawsuit; b) failed to accept an offer to settle the Boatright Plaintiffs' complaint within the limit of liability coverage

---

[8] Compl. ¶ 3., Nov. 3, 2020; *see* Pl.'s Mot. to Compel Ownership Claim File ¶ 1.
[9] Pl.'s Mot. to Compel Ownership Claim File ¶ 1. A reservation of rights is a notice given by an insurer that it will provide a defense while preserving its rights to deny coverage under the insurance policy. *See generally* 14A *Couch on Insurance* § 202:39 (Nov. 2023 Update).
[10] Pl.'s Mot. to Compel Ownership Claim File ¶ 1.
[11] Stipul. of Partial Dismissal with Prejudice, Sep. 22, 2020, N17C-09-180 CEB.
[12] Order, Sep. 24, 2022, N17C-09-180 CEB.
[13] Compl. ¶ 18, Nov. 3, 2020.

under the Policy, causing a judgment to be entered against Christopher; c) exposing Christopher to personal liability for the claims against him for negligence, which met the definition of an occurrence under the Policy and was not subject to the exclusion cited by the Defendant in their denials; and d) failed to provide Christopher with counsel despite the four corners of the Complaint containing allegations that triggered the duty to defend under the Policy.[14] Plaintiffs allege that State Farm's denial of coverage to Christopher was willful, wanton, malicious, and/or in bad faith.[15]

In the Motion, Plaintiffs seek to compel State Farm to produce the "Claim File" which, while never really defined by the parties, the Court understands to mean the file concerning the defense of Christopher's parents and so we will call it the "Parents' File."[16] This is necessary because the parties also refer to a "duty to defend file" which, again, is never defined in these pleadings, but the Court understands that to mean the file relating to State Farm's denial of coverage to Christopher Frick. The Court will therefore refer to this as the "Christopher File."

State Farm has given over the "Christopher File" to the Plaintiffs in discovery. That file is not in dispute. State Farm resists turning over the "Parents' File," on

---

[14] *Id.* at ¶ 18(a)-(d).
[15] *Id.* at ¶ 21.
[16] Pl.'s Mot. to Compel Ownership Claim File ¶¶ 4, 12–13.

5

grounds of relevancy.[17] State Farm argues that the Parents' File does not pertain to a claim at issue in the case and is not reasonably calculated to lead to the discovery of admissible evidence.

## STANDARD OF REVIEW

Delaware courts have "long recognized" that "broad and liberal treatment" of discovery promotes "issue formulation," assists in "fact revelation," and reduces trial "surprise."[18] Therefore, Rule 26 of the Superior Court Rules of Civil Procedure ("Civil Rule 26") provides that parties to litigation "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[19] Generally, "[i]nformation sought in discovery is considered relevant 'if there is any possibility that the information sought may be relevant to the subject matter of the action.'"[20] "[R]elevant evidence is discoverable, even if it may not be admissible."[21]

---

[17] Def.'s Opposition to Pl.'s Mot. to Compel ¶¶ 15–18.

[18] *Levy v. Stern*, 1996 WL 742818, at *2 (Del. Dec. 20, 1996); *see Olszewski v. Howell*, 253 A.2d 77, 78 (Del. Super. 1969) (observing that liberal discovery rules can "expedite the disposition of the case").

[19] Del. Super. Ct. Civ. R. 26(b)(1).

[20] *Burkhart v. Genworth Financial, Inc.,* 2023 WL 1434059, at *1 (Del. Ch. Feb. 1, 2023) (quoting *In re Appraisal of Dole Food Co., Inc.*, 114 A.3d 541, 548 (Del. Ch. 2014) (internal quotation marks omitted).

[21] Del. Super. Ct. Civ. R. 26(b)(1) cmt.1.

Because "[t]he scope of discovery is broad and far-reaching",[22] "objections to discovery requests, in general, will not be allowed."[23]  When faced with a discovery objection, the requesting party may move under Rule 37 to compel production.[24] Rule 37 imposes a "slight" burden on the movant.[25]  The movant need only offer "some minimal explanation" as to why the information sought is relevant.[26]  If that burden is met, then the objecting party must explain "why and in what way the information requested is privileged or otherwise improperly requested."[27]

Although "the scope of discovery is broad," it is "not limitless."[28]  The "application of the discovery rules is subject to" the Court's discretion.[29]  It is the Court's duty to "confine the scope of discovery to those matters that are truly relevant and to prevent discovery from evolving into a fishing expedition or from furthering purposes ulterior to the litigation."[30]  Discovery should be denied if the

---

[22] *Woodstock v. Wolf Creek Surgeons, P.A.*, 2017 WL 3727019, at *6 (Del. Super. Aug. 30, 2017).

[23] *Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, 2021 WL 5049459, at *2 (Del. Super. Nov. 1, 2021).

[24] Del. Super. Ct. Civ. R. 37(a).

[25] *In re Appraisal of Dole Food Co., Inc.*, 114 A.3d at 550.

[26] *Henlopen Hotel, Inc. v. United Nat'l Ins. Co.*, 2019 WL 3384843, at *1 (Del. Super. Jul. 26, 2019).

[27] *Twitter, Inc. v. Musk*, 2022 WL 3591142, at *1 (Del. Ch. Aug. 23, 2022).

[28] *In re Tyson Foods, Inc.*, 2007 WL 2685011, at *3 (Del. Ch. Sep. 11, 2007).

[29] *Mann v. Oppenheimer & Co.*, 517 A.2d 1056, 1061 (Del. 1986).

[30] *Omnicare, Inc. v. Mariner Health Care Mgmt. Co.*, 2009 WL 1515609, at *3 (Del. Ch. May 29, 2009) (*quoting Plaza Sec. Co. v. Office*, 1986 WL 14417, at *5 (Del. Ch. Dec. 15, 1986)).

Court "is satisfied that the administration of justice will be impeded by [its] allowance."[31]

## DISCUSSION

Civil Rule 26 provides that a party to litigation "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[32]  In the Motion, Plaintiffs argue that the Parents File is relevant to their claims in the Coverage Lawsuit.  In support, Plaintiffs primarily rely on the case of *Tackett v. State Farm and Cas. Ins. Co.*[33]

In *Tackett* the allegation was that the insurance company had delayed payment of underinsured motorist coverage in bad faith.[34]  The insurance company's litigation defense was that its handling of the plaintiff's claim had been in accord with its "routine handling" of such claims.[35]  In response to a discovery request, the insurance company produced part of the claim file but withheld the remainder on grounds of attorney-client privilege.[36]

---

[31] *Mann*, 517 A.2d at 1061 (*quoting Fish Engineering Corp. v. Hutchinson*, 162 A.2d 722, 725 (Del. 1960)).
[32] Del. Super. Ct. Civ. R. 26(b)(1).
[33] 653 A.2d 254 (Del. 1995).
[34] *Id.* at 256-57.
[35] *Id.* at 258.
[36] *Id.* at 257.

The *Tackett* Court ruled that once the defendant insurance company alleged a routine handling of the claim, the plaintiffs "could challenge those allegations only with a full showing of the facts contained in the claim file."[37] Further, without access to the complete claim file, the plaintiffs "would be forced to accept as true" the defendant insurance company's "claim of routine handling."[38] Thus, the plaintiff's claim for bad faith and the defendants affirmative reliance on the "routine handling" of the case implicated the entire claims file thereby creating a "compelling need" to discover the full context in which the insurance company handled the claim.[39]

In Plaintiff's view here, *Tackett* is significant insofar as the insurer disclosed part of its claim file but not all of it. The Court said "the disclosure of even a part of the contents of a privileged communication surrenders the privilege as to those communications."[40] But that was an observation by the Court, not its holding. Plaintiff makes more of it than the Court did.

Here, Plaintiffs place primary emphasis on what it believes was an improper commingling of the two files. Plaintiffs urge that due to this alleged impropriety, Defendant has waived any claim it might make to refuse production of both files. This proposition does not flow logically from the *Tackett* decision or, for that matter,

---

[37] *Id.* at 260.
[38] *Id.*
[39] *Tackett,* 653 A.2d at 259-60.
[40] *Tackett,* 653 A.2d at 260 (*citing Citadel Holding Corp. v. Roven*, Del. Supr. 603 A.2d 818, 825 (Del. 1992)).

from common sense. A defendant can no more avoid disclosure of discoverable materials by the mere artifice of putting it in a different file than a plaintiff can mandate disclosure because materials from the two files were mixed up.

If the insurer opens a claim file, which we will call Claim 1, and for whatever reason, it elects to break that file down into Claim 1A and Claim 1B, that would seem to be the insurer's business, and could be undertaken for any number of reasons, none of any particular legal relevance. Here, the deposition testimony was that the two files in question both shared the same claim number – one reason why materials might find themselves into the wrong one of the two files.

Let us suppose further that the insurer, in response to a discovery request in a lawsuit concerning Claim 1B, elects to simply turn the entire 1B claim file to opposing counsel. Does that make the Claim 1A file discoverable? Of course not. Suppose a clerk erroneously filed materials belonging in the 1A file into the 1B file. Does that make the 1A file discoverable? Of course not.

Is there evidence that the segregators of the files into 1A and 1B did so for the purpose of shielding from discovery materials that would otherwise be discoverable? Not in this record. Rather, Plaintiff urges that the simple act of misfiling, renders the 1A file discoverable. The Court does not accept that proposition.

10

The Plaintiffs also cite *Thomas v. Harford Mut. Ins. Co.*[41] to support their Motion. But *Thomas* was a case *denying* the requested claim file discovery, finding that plaintiffs had failed to demonstrate a "compelling need" for the claim file which, the *Thomas* Court ruled, "must rest on more than the making of a bad faith claim."[42]

The Trial Court "has broad discretion in determining the scope of discovery."[43] A "claims file is a unique, contemporaneously prepared history of the [] [insurer's] handling of the claim."[44] In Delaware, "the scope of document discovery must be limited to only the production of documents relevant to the subject matter that is being litigated between the parties."[45] The Fricks are not parties to this lawsuit, State Farm defended them in the Underlying Lawsuit, and they did not murder Caroline Ekong.

In this case, the Plaintiffs have not shown that the Parents File is relevant to a claim or defense in the Coverage Lawsuit. The record in this case indicates that some documents were misfiled. That is all it shows. Misfiled documents, without more, does not make out a case of waiver and that was not the holding in *Tackett*.

---

[41] *Thomas v. Harford Mut. Ins. Co.,* 2004 WL 1172882 (Del. Super. Apr. 20, 2004).
[42] *Id.* at *5.
[43] *Wei v. Zoox, Inc.*, 268 A.3d 1207, 1212 (Del. Ch. 2022).
[44] *Boyer-Gray v. Nationwide Mut. Ins. Co.,* 1991 WL 270630, at *2 (Del. Super. Dec. 6, 1991).
[45] *Hiller v. Sedgwick Claims Mgmt. Services, Inc.,* 2023 WL 107389, at *2 (Del. Super. Jan. 4, 2023) (citations omitted).

At its core, the matter before the Court is an insurance coverage dispute. The dispute centers on whether State Farm owed Christopher coverage under the Policy for the Underlying Lawsuit. The Plaintiffs have not shown that the Parents File contains information that may be relevant to the subject matter of this action. As such, the Court will sustain Defendant's objection to disclosure of the Parent's file. The Motion is **DENIED**.

    **IT IS SO ORDERED**.

/s/ Charles E. Butler
Charles E. Butler, Resident Judge

12